1   NICOLA T. HANNA
    United States Attorney
2   THOMAS D. COKER
    Assistant United States Attorney
3   Chief, Tax Division
    MELISSA BRIGGS (Cal. Bar No. 320697)
4   JOHN D. ELLIS (Cal. Bar No. 322922)
    Assistant United States Attorneys
5        Federal Building, Suite 7211
         300 North Los Angeles Street
6        Los Angeles, California 90012
         Telephone:   (213) 894-6165
7                     (213) 894-2740
         Facsimile:   (213) 894-0115
8        E-mail:      melissa.briggs2@usdoj.gov
                      john.ellis3@usdoj.gov
9
    Attorneys for the United States of America
10

11              UNITED STATES DISTRICT COURT

12        FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                   SOUTHERN DIVISION

| | |
|---|---|
| 14 JANE DOE, | No. 8:20-cv-00858-SVW-JEM |
| 15        Plaintiff, | Opposition to Motion for Temporary Restraining Order |
| 16        v. | |
| 17 DONALD J. TRUMP, et al., | [No Hearing Scheduled] |
| 18        Defendants. | |
| 19 | Hon. Stephen V. Wilson |

20

21

22

23

24

25

26

27

28

1    The United States of America[1] (United States) opposes plaintiff's Application for

2    a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction

3    Should Not Issue (application, ECF 9) and Memorandum in Support Thereof (ECF 11).

4

5    Dated: May 26, 2020                    Respectfully submitted,

6                                           NICOLA T. HANNA
                                            United States Attorney
7                                           THOMAS D. COKER
                                            Assistant United States Attorney
8                                           Chief, Tax Division

9

10         /s/ John D. Ellis
                                            MELISSA BRIGGS
11                                          JOHN D. ELLIS
                                            Assistant United States Attorneys
12
                                            Attorneys for the
13                                          United States of America

14

15

16

17

18

19

20

21

22

23

24

25

26    ────────────────────

27         [1] The complaint names as defendants various government officials and agencies.
      The only proper party defendant is the United States of America.  *See Gilbert v.*
28    *DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985).

2

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.  INTRODUCTION .......................................................................................................1

II.  THE CARES ACT ....................................................................................................2

III.  STATEMENT OF FACTS .......................................................................................4

IV.  ARGUMENT ..............................................................................................................5

    A.  Plaintiff is not Entitled to a Temporary Restraining Order or Preliminary Injunction ...............................................................................5

        1.  The first *Winter* factor is plaintiff's likelihood of success on the merits ..........................................................................................7

            a.  Plaintiff is unlikely to succeed on the merits because this Court lacks jurisdiction over her complaint. ...........................7

                (i)  26 U.S.C. § 7422 provides plaintiff's remedy ...................................................................................8

                (ii)  Plaintiff cannot rely on 5 U.S.C. § 702 as a waiver of sovereign immunity ..............................9

                (iii)  Plaintiff lacks standing and her claims are not yet ripe……………………………………… .... 10

            b.  Plaintiff fails to state a claim on the merits ...........................13

                (i)  Section 6428(g) does not implicate plaintiff's right to marry ………………………………... 14

                (ii)  Section 6428(g) does not make distinctions based on alienage, and even assuming *arguendo* it does, distinctions based on alienage are subject to rational-basis review…………………………17

                (iii)  Plaintiff cannot show a likelihood of success on the merits because section 6428(g) is subject to rational-basis review and plaintiff does not meet her burden to show it is unconstitutional……. ... 19

        2.  The second *Winter* factor is irreparable injury …………………... 21

        3 & 4. The third and fourth *Winter* factors are the balancing of the hardships and the public interest …………………………….... 22

    B.  Plaintiff's Application for Class Certification Should be Denied ..............24

V.  CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)  ................................... 12

*Aleman v. Glickman*, 217 F.3d 1191 (9th Cir. 2000) .................................... 15, 17, 19-21

*All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)  ........................... 5

*Anderson v. United States*, 612 F.2d 1112 (9th Cir. 1980) ............................... 5

*Apache Bend Apts., Ltd. v. United States*, 987 F.2d 1174 (5th Cir. 1993)  ...................... 8

*Arizona v. United States*, 567 U.S. 387 (2012)............................... 19

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ...................................... 11

*Armstrong & Armstrong, Inc. v. United States*, 356 F. Supp. 514 (E.D. Wash. 1973) .. 10

*Barr v. Commissioner*, 51 T.C. 693 (1969)  ................................... 18

*Barter v. United States*, 550 F.2d 1239 (7th Cir. 1977) .................................... 16

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ................................... 10

*Brushaber v. Union P.R. Co.*, 240 U.S. 26 (1916)  ................................... 21

*Califano v. Jobst*, 434 U.S. 47 (1977)  .................................... 14, 15

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000)  ................ 1

*Droz v. Commissioner*, 48 F.3d 1120 & n.1 (9th Cir. 1995)  .......................... 11

*Druker v. Commissioner*, 697 F.2d 46 (2d Cir. 1982) ................................. 15-16

*Dunn & Black P.S. v. United States*, 492 F.3d 1084 (9th Cir. 2007)  ............................ 7

*FCC v. Beach Communications*, 508 U.S. 307 (1993) .................................... 20

*Fournier v. Sebelius*, 718 F.3d 1110 (9th Cir. 2013) ................................... 20

*Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815 (7th Cir. 2014)  ................ 7-8

*Gaylor v. Mnuchin*, 919 F.3d 420 (7th Cir. 2019) ................................... 11

*Gilbert v. DaGrossa*, 756 F.2d 1455 (9th Cir. 1985)  ................................... 2

*Graham v. Richardson*, 403 U.S. 365 (1971) ................................... 19

*Hansen v. Dep't of Treasury*, 528 F.3d 598 (9th Cir. 2007)  .......................... 18

*Heller v. Doe*, 509 U.S. 312 (1993) ................................... 20

*Hofstetter v. Commissioner*, 98 T.C. 695 (1992) ............................................................ 18

*Hooper v. California*, 155 U.S. 648 (1895) .............................................................19-20

*Hughes v. United States*, 953 F.2d 531 (9th Cir. 1992) ................................................ 22

*Hutchinson v. United States*, 677 F.2d 1322 (9th Cir. 1982) ...................................... 10

*INS v. Chadha*, 426 U.S. 919 (1983) ............................................................................ 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ................................ 7

*Lane v. Pena*, 518 U.S. 187 (1996) ................................................................................ 7

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) ...................... 10

*Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014) ............................................................... 14

*In Matter of Laureano*, 19 I & N. Dec. 1 (B.I.A. Dec. 12, 1983) ................................22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................. 10

*Mapes v. United States*, 576 F.2d 896 (Ct. Cl. 1978) .................................................. 16

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ............................................................................ 5, 7

*Mathews v. Diaz*, 426 U.S. 67 (1976) ...........................................................................19

*McGuire v. United States*, 550 F.3d 903 (9th Cir. 2008) .............................................. 7

*Moritz v. Commissioner*, 469 F.2d 466 (10th Cir. 1972) ............................................. 11

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ................................. 19, 21

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) ...................... 12

*Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144 (9th Cir. 2017) ........................ 9

*Oatman v. Dep't of Treasury*, 34 F.3d 787 (1994) ........................................................ 8

*Preiser v. Newkirk*, 422 U.S. 395 (1975) ......................................................................11

*Quarty v. United States*, 170 F.3d 961 (9th Cir. 1999) ......................................... 7, 9, 11

*Rand v. United States*, 249 U.S. 503 (1918) ................................................................. 9

*Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983) ............. 20

*Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43 (1993) ................................................ 12

*Sampson v. Murray*, 415 U.S. 61 (1974) ...................................................................... 22

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973) ..................................... 20

*Sarmiento v. United States*, 678 F.3d 147 (2d Cir. 2012) ................................................. 8

*Schinasi v. Commissioner*, 53 T.C. 382 (1969) ....................................................... 16, 18

*Sorenson v. Sec'y of Treasury*, 475 U.S. 851 (1986) ....................................................... 8

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) ........... 5

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ................................................. 6

*In re Talmadge*, 832 F.2d 1120 (9th Cir. 1987) ...................................................... 15, 17

*Toll v. Moreno*, 458 U.S. 1 (1982) ................................................................................... 19

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ................................................ 12

*U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807 (2016) .......................... 9

*U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091 (9th Cir. 2010) ............................. 5

*United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1 (2008) ..................... 7-8, 10

*United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269 (1931) ...................................... 9

*United States v. Md. Savings-Share Ins. Corp.*, 400 U.S. 4 (1970) .............................. 20

*Vermont Agency of Natural Res. v. United States*, 529 U.S. 765 (2000) ...................... 10

*Warnke v. United States*, 641 F. Supp. 1083 (E.D. Ky. 1986) ...................................... 11

*Wash. Toxics Coal. v. EPA*, 413 F.3d 1024 (9th Cir. 2005) ........................................... 9

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ................................... 5, 22

*Zablocki v. Redhail*, 434 U.S. 374 (1978) .............................................................. 14, 15

## PUBLIC LAWS

Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. 116-136
     (March 27, 2020) ................................................................................. 2

The Economic Stimulus Act of 2008, Pub. L. No. 110-185, 122 Stat. 613
     (Feb. 13, 2008) ................................................................................. 17

**STATUTES**

**Internal Revenue Code, 26 U.S.C.**

§ 1 ........................................................................................ 16

§ 5 ........................................................................................ 17

§ 24 ............................................................................... 2, 8, 17

§ 32 ......................................................................................... 8

§ 107 ..................................................................................... 11

§ 151 ....................................................................................... 2

§ 1402 ................................................................................... 11

§ 6013 ................................................................................... 16

§ 6401 ..................................................................................... 8

§ 6428 ........................................................................... passim

§ 6511 ..................................................................................... 8

§ 6532 ..................................................................................... 8

§ 7422 ......................................................................... 8, 10, 23

**Other Statutes**

5 U.S.C. § 702 ....................................................................... 9

5 U.S.C. § 704 ....................................................................... 9

28 U.S.C. § 1346 ................................................................. 8-9

28 U.S.C. § 1491 ................................................................. 8-9

42 U.S.C. § 405 ................................................................... 17

**IRS PUBLICATIONS AND WEBSITES**

*Economic Impact Payment Information Center*, available at

https://www.irs.gov/coronavirus/economic-impact-payment-information-center.... 2-4

IRS Publication 519, available at https://www.irs.gov/pub/irs-pdf/p519.pdf ............... 18

## **OTHER AUTHORITIES**

20 C.F.R. § 422.104 ........................................................................... 17

26 C.F.R. § 301.6109-1(d)(3) ........................................................... 18

Congressional Research Service, Report R43840, "Federal Income Taxes and
       Noncitizens: Frequently Asked Questions" ........................................ 18

Congressional Research Service, Report R46339, "Unauthorized Immigrants' Eligibility
       for COVID-19 Relief Benefits: In Brief" .......................................... 18

Health and Economic Recovery Omnibus Emergency Solutions (HEROES) Act,
       H.R. 6800, 116th Cong. (2020) ....................................................... 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Jane Doe[2] contends that the Internal Revenue Service (IRS) failed to issue her an advance refund of a 2020 tax credit because she is married to and has filed joint income tax returns with an individual without a social security number (SSN). Although she could qualify for the credit by filing a separate return from her spouse, plaintiff requests injunctive and declaratory relief, including a declaration that section 6428(g) of the Internal Revenue Code (Title 26, U.S.C.) is unconstitutional and an order requiring the United States to hold in escrow funds to pay advance refunds to plaintiff and similarly situated individuals.

Plaintiff's claims are premature.  Congress did not create a justiciable right to an advance refund, and plaintiff's eligibility for the tax credit cannot be determined until the 2020 tax year ends and she selects a filing status.  Plaintiff therefore lacks standing to obtain the temporary restraining order or preliminary injunction she seeks, and this Court lacks jurisdiction to consider her claims.  Plaintiff also cannot show that she is likely to succeed on the merits of her claims, that she will suffer irreparable injury, or that the balance of the hardships and the public interest favor relief.  Her application should be denied.

---

[2] Plaintiff elected to file this case using a pseudonym.  Pseudonyms are allowed only when "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).  In cases where a party seeks to proceed using a pseudonym, the district court should determine the need for anonymity by evaluating (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to retaliation.  *Id*. at 1067 (collecting cases).  Finally, the court must decide whether the public's interest in the case would be best served by requiring that the anonymous party reveal her identity.  *Id*.  Plaintiff has not established or alleged any circumstances that would allow her to use a pseudonym.  Additionally, not knowing plaintiff's identity prevents the United States from evaluating her contention that she would qualify for an advance refund or tax credit if her spouse had an SSN.  (*See* ECF 1 ¶ 41).

## II.    THE CARES ACT

On March 27, 2020, the President of the United States of America signed into law the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. 116-136. The CARES Act added section 6428 to the Internal Revenue Code.  Pub. L. 116-136, sec. 2201(a).  Section 6428 authorizes an eligible individual to claim a tax credit (CARES Act credit) for their 2020 tax year.  The amount of the credit is based on the individual's filing status, her adjusted gross income, and the number of qualifying children (within the meaning of 26 U.S.C. § 24(c)) claimed on her return.  *See* 26 U.S.C. § 6428(a) and (c).  Nonresident aliens, dependents (as defined in 26 U.S.C. § 151), and estates and trusts are ineligible for the credit.  26 U.S.C. § 6428(d).

As relevant to plaintiff's complaint, no CARES Act credit will be allowed to an individual who fails to provide a valid identification number for herself, any qualifying children, or her spouse, if filing a joint return.[3]  26 U.S.C. § 6428(g)(1).  A valid identification number means an SSN valid for employment (*see* 26 U.S.C. § 24(h)(7)) or in the case of a qualifying child who is legally adopted or placed for adoption, the adoption taxpayer identification number of such child.  26 U.S.C. § 6428(g)(2).

If a married individual may not claim a CARES Act credit on a joint return because her spouse lacks an SSN valid for employment, she may claim the credit for herself and any qualifying children (assuming that they have valid identification numbers) by using the married filing separately filing status.  *See Economic Impact Payment Information Center*, https://www.irs.gov/coronavirus/economic-impact-payment-information-center Q&A 23 ("when spouses file jointly, both spouses must have valid SSNs to receive a Payment with one exception . . . If spouses file separately, the spouse who has an SSN may qualify for a Payment; the other spouse without a valid SSN will not qualify.") (last accessed May 19, 2020).

---

[3] A married couple may provide only one spouse's SSN to claim a CARES Act credit on a joint return if at least one of the spouses was a member of the Armed Forces of the United States at any time during the taxable year.  26 U.S.C. § 6428(g)(3).

2

In accordance with section 6428(f), the IRS has begun issuing advance refunds of the CARES Act credit. *See generally* https://www.irs.gov/coronavirus/economic-impact-payment-information-center (last visited May 9, 2020).  The advance refunds are computed based on the information available to the IRS.  The IRS will first use information from an individual's 2019 tax return.  26 U.S.C. § 6428(f)(1).  If no 2019 tax return was filed, the IRS may use information from the individual's 2018 tax return.  26 U.S.C. § 6428(f)(5).  If no 2018 or 2019 tax return was filed, the IRS may use information provided to it on a 2019 social security benefit or social security equivalent benefit statement.  *Id.*  By statute, the IRS is directed to "refund or credit any overpayment attributable to [] section [6428] as rapidly as possible," but the IRS is authorized to issue advance refunds through December 31, 2020.  26 U.S.C. § 6428(f)(3)(A).

Section 6428 does not confer upon eligible individuals any justiciable right to an advance refund.  Nor does it confer any right to receive an advance refund at a particular time or in a particular manner.  Section 6428(a) provides that an individual's CARES Act credit "shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2020."  There is no corresponding mandate that the IRS immediately issue a CARES Act credit in the form of an advance refund.  If the IRS does not issue an advance refund to an individual who will eventually qualify for a CARES Act credit, there is no mechanism in section 6428 by which the individual can compel it to do so.  Instead, the statute contemplates that any advance refund an individual receives will be reconciled with the CARES Act credit reported on her 2020 tax return.  *See* 26 U.S.C. § 6428(e) (providing that the amount of any CARES Act credit will be reduced (but not below zero) by the aggregate amount of any advance refunds and credits made or allowed) and 26 U.S.C. § 6428(f)(3)(A) (providing that any advance refunds and credits will be made by December 31, 2020).  Thus, an eligible individual who qualifies for a tax benefit under section 6428 will receive it in one of three ways: (1)

3

1  as an advance refund in 2020, (2) as a CARES Act credit upon filing her 2020 tax return,
2  or (3) as an advance refund and a CARES Act credit.[4]

3        Some individuals who believe they will be eligible for a CARES Act credit have
4  received a smaller advance refund than they expected or no advance refund at all.  These
5  individuals will have to wait until 2021 to claim and receive the CARES Act credit on
6  their 2020 tax return.  *See Economic Impact Payment Information Center*,
7  https://www.irs.gov/coronavirus/economic-impact-payment-information-center Q&A 29
8  ("If you did not receive the full amount to which you believe you are entitled, you will
9  be able to claim the additional amount when you file your 2020 tax return.") (last
10 accessed May 11, 2020).

11 **III.    STATEMENT OF FACTS**

12        Plaintiff filed her complaint (ECF 1) on May 6, 2020, and her application two
13 days later.  Plaintiff alleges that she has an SSN but is married to a foreign national who
14 has an Individual Taxpayer Identification Number (ITIN). (ECF 11-2 ¶¶ 1, 3.)  She
15 contends that the IRS has not and will not issue her an advance refund of her 2020
16 CARES Act credit because she filed her 2018 tax return with her spouse using the
17 married filing jointly filing status.  (*Id*. at ¶ 4.)  Plaintiff makes no allegations regarding
18 her 2019 tax return.  (*See id*.)  She alleges she has suffered "grave economic hardships . .
19 . and irreparable harm" without an advance refund.  (ECF 11 at ¶¶ 33, 34.)  Plaintiff
20 seeks a temporary restraining order or preliminary injunction that certifies a class of
21 similarly situated individuals; a nationwide injunction prohibiting the United States from
22 enforcing the CARES Act as it was drafted; an order requiring the government to hold in
23 escrow advance refunds for all similarly situated individuals; and various declaratory
24 relief, including a declaratory judgment that 26 U.S.C. § 6428(g)(1) is unconstitutional.
25 (*Id*. at pp. 29-30.)

26

27        _____

28        [4] The third scenario would occur when the IRS issues an individual an advance
       refund that is less than the CARES Act credit reported on her return.

4

## IV.   ARGUMENT

### A.   Plaintiff is not Entitled to a Temporary Restraining Order or Preliminary Injunction

In order to obtain a temporary restraining order or preliminary injunction, plaintiff must demonstrate that: (1) she is "likely to succeed on the merits" of her complaint; (2) she "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [her] favor"; and (4) a temporary restraining order or preliminary injunction "is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135-38 (9th Cir. 2011) (applying the *Winter* test); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (standards same for preliminary injunctions and temporary restraining orders). If a plaintiff raises "serious questions going to the merits," a court may grant interim relief if the balance of hardships "tips sharply in [her] favor," she is likely to suffer irreparable harm, and interim relief is in the public interest. *All. For The Wild Rockies*, 632 F.3d at 1135 (citation omitted).

"[T]he very purpose of a preliminary injunction [] is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). Here, however, plaintiff seeks an injunction which would upend, rather than preserve, the status quo by line-editing an act of Congress and requiring the United States to hold funds in escrow for an unascertained group of individuals. Mandatory injunctions like the one plaintiff seeks "'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980)).

5

Moreover, a plaintiff must establish standing in relation to the relief she requests in a preliminary injunction. *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009) ("To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."). Plaintiff has not done so. The harm she alleges is hypothetical, not concrete or particularized. The CARES Act allows eligible individuals to receive a tax benefit in one of three ways: as an advance refund, as a CARES Act credit, or as some combination of the two. Although the IRS is authorized to issue advance refunds of the credit through December 31, 2020, there is no statutory entitlement to an advance refund. Instead, an individual who receives a smaller advance refund in 2020 than she believes she is entitled to must claim a CARES Act credit on her 2020 tax return. Plaintiff's eligibility for a CARES Act credit has not been determined because her eligibility will be determined by, among other things, her adjusted gross income for the 2020 tax year and the filing status she will select. Plaintiff can obtain the credit by filing her 2020 return as married filing separately. If she chooses to file a joint tax return with her spouse and submit an administrative claim for refund challenging section 6428(g) on constitutional grounds, she will not have an injury in fact unless and until the IRS has denied (or has not acted on within six months) that claim. As such, plaintiff's claim is not ripe, and she lacks standing to obtain the relief she requests in the preliminary injunction.

As discussed below, plaintiff has not demonstrated that she qualifies for injunctive relief under the *Winter* factors. First, plaintiff has not demonstrated a likelihood of success on the merits. This Court lacks jurisdiction over her claims, her claims are premature, and she lacks standing to raise them now because, *inter alia*, she has not yet claimed or been denied a CARES Act credit. In addition, her constitutional claims lack

6

1   merit.  Second, plaintiff has not demonstrated irreparable harm because her alleged

2   injury, the denial of a tax benefit, is economic and thus compensable with damages.  *See*

3   *Marlyn Nutraceuticals, Inc*., 571 F.3d at 879.  Lastly, plaintiff has not demonstrated that

4   the balance of the equities and the public interest favor relief.

5           1.   The first *Winter* factor is plaintiff's likelihood of success on the

6                merits.

7                a.   *Plaintiff is unlikely to succeed on the merits because this Court*

8                     *lacks jurisdiction over her complaint.*

9           It is fundamental that the United States cannot be sued without an '"unequivocally

10  expressed waiver of sovereign immunity by Congress."'  *McGuire v. United States*, 550

11  F.3d 903, 910 (9th Cir. 2008) (quoting *Dunn & Black P.S. v. United States*, 492 F.3d

12  1084, 1088 (9th Cir. 2007)).  "A waiver of the Federal Government's sovereign

13  immunity must be unequivocally expressed in statutory text."  *Lane v. Pena*, 518 U.S.

14  187, 192 (1996).  Unless the plaintiff demonstrates that the suit falls within the

15  unequivocally expressed terms of a statutory waiver of sovereign immunity, the court

16  lacks jurisdiction over the subject matter of the action, and dismissal is required.  *Id.*;

17  *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994).

18          In the tax context, Congress has expressly limited the circumstances under which

19  suits can be brought against the government through a carefully articulated scheme.  As

20  the Supreme Court has repeatedly emphasized, tax litigation in the district courts is

21  limited to refund suits, which can be brought only if certain jurisdictional prerequisites

22  have been satisfied.  *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 5-8

23  (2008).  This limitation applies to constitutional challenges to the Internal Revenue Code

24  like the challenge before this Court.  *See id.* at 9 (Code's administrative exhaustion

25  requirements apply to constitutional claims); *Quarty v. United States*, 170 F.3d 961, 973

26  (9th Cir. 1999) (same); *see also Freedom from Religion Found., Inc. v. Lew*, 773 F.3d

27

28

                                            7

815 (7th Cir. 2014); *Apache Bend Apts., Ltd. v. United States,* 987 F.2d 1174, 1177-79 & n.4 (5th Cir. 1993) (*en banc*).

(i)   26 U.S.C. § 7422 provides plaintiff's remedy

The specific waiver of sovereign immunity that would allow the refund of a tax credit, including the credit that is the subject of this case, is contained in 26 U.S.C. § 7422(a).  *Clintwood*, 553 U.S. at 5-8; *see also Sarmiento v. United States*, 678 F.3d 147, 151 (2d Cir. 2012) (addressing the taxpayers' claim for a payment under former section 6428, another advance refund "stimulus check" program, after the taxpayers "filed an administrative claim with the IRS under 26 U.S.C. § 7422 seeking to recover the withheld" payments).

Refundable tax credits such as the Earned Income Credit (EIC), 26 U.S.C. § 32, the Child Tax Credit (CTC), 26 U.S.C. § 24(d), and the CARES Act credit, 26 U.S.C. § 6428, create a legal fiction that the recipient has overpaid her taxes, thereby entitling her to a tax refund as a mechanism for achieving social policy goals.  *See Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 864 (1986) (discussing the EIC).  If an individual's refundable credits exceed her tax liability (after first reducing that liability by other credits), the excess amount "shall be considered an overpayment," and she is eligible for a refund in an amount corresponding to that constructive overpayment.  *See* 26 U.S.C. § 6401(b)(1).  An individual can seek such a credit by submitting to the IRS an administrative refund claim pursuant to section 7422.  *See Sorenson,* 475 U.S. at 1439.  Assuming the claim is timely, *see* 26 U.S.C. § 6511(a), and the IRS denies the claim or fails to act upon it within six months, *see* 26 U.S.C. § 6532(a)(1), the individual may then sue for a refund of the credit pursuant to section 7422(a).  *See* 28 U.S.C. §§ 1346(a)(1), 1491; *see also Sorenson*, 475 U.S. at 1439; *Oatman v. Dep't of Treasury*, 34 F.3d 787, 789 (1994).

There is no exception set forth in section 6428 to these basic jurisdictional requirements.  Thus, to challenge the constitutionality of section 6428(g), plaintiff must

8

file a joint 2020 income tax return after the filing season begins in 2021, then file a timely administrative refund claim with the IRS claiming that she is entitled to a CARES Act credit because section 6428(g) is unconstitutional.  Until her administrative refund claim is denied or six months pass, plaintiff cannot bring a refund suit.  *See* 28 U.S.C. §§ 1346(a)(1), 1491; *Quarty*, 170 F.3d at 973 (dismissing constitutional claim for lack of jurisdiction because plaintiff was required to comply with requirements of section 7422 to raise constitutional claim despite "possible futility") (citing *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 273 (1931)); *Rand v. United States*, 249 U.S. 503, 510 (1918).

(ii)    <u>Plaintiff cannot rely on 5 U.S.C. § 702 as a waiver of sovereign immunity</u>

Plaintiff alleges that the Administrative Procedure Act (APA), specifically 5 U.S.C. § 702, provides the required waiver of sovereign immunity for her claims.  (*See* ECF 1 ¶ 16.)  Although section 702 contains a waiver of sovereign immunity, 5 U.S.C. § 704 contains express limits on this Court's jurisdiction for claims brought under the APA.  *See Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1168 (9th Cir. 2017). Section 704 provides that: "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  Thus, determining whether jurisdiction exists under section 704 requires an inquiry into whether other provisions could provide plaintiff with a remedy.  *See U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1815 (2016) ("agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court.").  If any other avenues of relief exist, there is no jurisdiction under section 704, and the APA claims must be dismissed.  *See Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1034 (9th Cir. 2005) ("Because this substantive statute independently authorizes a private right of action, the APA does not govern the plaintiffs' claims.")

9

1    In this case, there is an adequate remedy that precludes review under the APA.  As

2    discussed above, Congress specifically authorized a cause of action for a refund suit

3    under section 7422.  To challenge her alleged exclusion from the scheme set forth in

4    section 6428, plaintiff must elect to file a joint tax return for the 2020 tax year, then

5    submit an administrative claim for refund raising her constitutional claims.  Plaintiff

6    must wait until the IRS denies the claim or does not act upon it in six months.  She may

7    then sue for a refund.  Because plaintiff has a remedy under section 7422, her claims do

8    not fall within the APA's waiver of sovereign immunity.  *See Bowen v. Massachusetts,*

9    487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the

10   APA to duplicate existing procedures for review of agency action."); *Armstrong &*

11   *Armstrong, Inc. v. United States*, 356 F. Supp. 514, 521 (E.D. Wash. 1973) (where

12   "relief is at least available . . .  judicial review may not be predicated on the [APA]"),

13   *aff'd*, 514 F.2d 402 (9th Cir. 1975); *see also Clintwood*, 553 U.S. at 8-12.

14        Finally, it is well-settled that a plaintiff's naming of individual government

15   officials as defendants does not allow her to avoid the jurisdictional bar of sovereign

16   immunity.  *See*, *e.g*., *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982);

17   *Larson v. Domestic & Foreign Commerce Corp*., 337 U.S. 682, 688 (1949).

18                    (iii)    Plaintiff lacks standing and her claims are not yet ripe

19        Article III standing requires that a plaintiff establish (a) a concrete and

20   particularized injury that is actual and imminent, as opposed to conjectural or

21   hypothetical, (b) a fairly traceable causal connection between the injury and the alleged

22   conduct, and (c) a substantial likelihood that the injury will be redressed by a favorable

23   decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Vermont Agency*

24   *of Natural Res. v. United States*, 529 U.S. 765, 771 (2000).  The elements of standing

25   "are not mere pleading requirements but rather an indispensable part of the plaintiff's

26   case," and the plaintiff bears the burden of proof with respect to each element.  *Lujan*,

27   504 U.S. at 561.  If at any point an element of standing is not met, the case should be

28

                                              10

1    dismissed.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)

2    (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

3            In order to have standing to challenge a tax benefit as unconstitutional, a plaintiff

4    must (among other requirements) actually seek the tax benefit herself.  *See Droz v.*

5    *Commissioner*, 48 F.3d 1120, 1122 & n.1 (9th Cir. 1995) (recognizing that taxpayer had

6    standing to raise Establishment Clause challenge to a religious exemption from the self-

7    employment tax under 26 U.S.C. § 1402(g) for sects opposed to certain insurance, where

8    he claimed, and was denied, the exemption); *see also Gaylor v. Mnuchin*, 919 F.3d 420,

9    425-426 (7th Cir. 2019) (taxpayers had standing to challenge 26 U.S.C. § 107 because

10   the IRS took longer than six months to act on their refund requests claiming exemptions

11   under that section); *Moritz v. Commissioner*, 469 F.2d 466, 467 (10th Cir. 1972)

12   (addressing Equal Protection challenge brought by a single male who claimed a

13   dependent-care expense deduction that the statute limited to married or widowed men,

14   but allowed to women regardless of marital status); *Warnke v. United States*, 641 F.

15   Supp. 1083 (E.D. Ky. 1986) (addressing Establishment Clause challenge to regulations

16   under 26 U.S.C. § 107 by taxpayer who claimed, and was denied, the exclusion).  In

17   these cases, the individuals actually sought the tax benefit from the taxing authority and

18   then litigated their own tax liability, either by way of a deficiency proceeding in Tax

19   Court (as in *Droz* and *Moritz*) or by filing a refund suit (as in *Gaylor* and *Warnke*).

20           To have standing to challenge the constitutionality of section 6428(g), plaintiff

21   must have first sought and been denied a tax credit under that provision.  Thus, as we

22   have previously explained, she must file a joint tax return for 2020, submit an

23   administrative claim for refund in which she raises her constitutional arguments, and

24   wait until the IRS denies (or does not act upon within six months) her claim.  These

25   requirements apply even if performing them would be an exercise in futility.  *See*

26   *Quarty*, 170 F.3d at 973.  Until plaintiff has followed the administrative procedures for

27

28

                                                    11

claiming a credit, her injury is merely hypothetical, and she lacks standing to bring her claims.

Finally, plaintiff's challenge to section 6428(g) fails as a jurisdictional matter under the ripeness doctrine.  The ripeness doctrine is intended to avoid "premature adjudication" over "abstract disagreements" and to postpone judicial review until "an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-149 (1967).  Where agency action offers a benefit or establishes criteria for dispensing benefits, courts generally have concluded that the plaintiff's application for benefits must be denied before a claim is ripe for review.  *See Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 809 (2003); *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57-59 (1993).  And courts have been particularly reluctant to find a specific pre-enforcement challenge ripe where (as in the tax refund context) a statutory scheme creates a separate process for review.  *See, e.g., Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-09 (1994).

As explained above, section 6428 does not guarantee any individual an advance refund.  Rather, the statutory scheme that Congress selected provides that the IRS will issue a CARES Act credit to an eligible individual in one of three ways: (1) as an advance refund in 2020; (2) as a refundable tax credit upon the filing of her 2020 tax return; or (3) as a combination of the two.  Individuals like plaintiff who have not received an advance refund must therefore claim a CARES Act credit on their 2020 tax return.  But the amount (if any) of the CARES Act credit to which plaintiff will be entitled has not been determined.  The amount of the credit will be determined by factors set forth in section 6428, including plaintiff's filing status, her adjusted gross income, and the number of qualifying children she will claim on her 2020 tax return.  *See* 26 U.S.C. §§ 6428(a), (c).  These factors have not yet been determined because the 2020 tax year will not end until December 31, 2020.

Although plaintiff contends she will not qualify for a CARES Act credit or advance refund, her circumstances may change.  For instance, there are legislative efforts to amend section 6428(g) which, if enacted, may result in plaintiff receiving an advance refund or CARES Act credit even if she elects to file a joint return.  *See* Health and Economic Recovery Omnibus Emergency Solutions (HEROES) Act, H.R. 6800, 116th Cong. (2020) § 20102.  Additionally, plaintiff may elect to file her 2020 tax return using the married filing separately filing status and thus be eligible for the CARES Act credit.  Or plaintiff's spouse may qualify for an SSN or join the military before the year ends.  *See* 26 U.S.C. §§ 6428(g)(1) and (3).  Lastly, plaintiff's financial circumstances may improve, completely eliminating her eligibility for the credit based on her adjusted gross income.  *See* 26 U.S.C. § 6428(c).  In short, plaintiff's eligibility for a CARES Act credit and the amount of the credit are uncertain.

In sum, plaintiff cannot show a likelihood of success on the merits because this Court lacks jurisdiction over her claims in the first instance.[5]

### b.    *Plaintiff fails to state a claim on the merits*

Moreover, plaintiff is unlikely to prevail on the merits of her claims.  Plaintiff contends that section 6428(g) violates the "First, Fifth, and Fourteenth Amendments to the U.S. Constitution including the right of association, the right to due process of law, the right to equal protection under the law, and the penumbra of privacy rights created by the First, Third, Fourth, and Fifth Amendments that creates a fundamental right to marriage."  (ECF 11 at p. 19.)  Plaintiff also argues that section 6428(g) impermissibly discriminates against her based on her spouse's alienage.  (*Id*. at p. 20).  She argues that as a violation of her "fundamental right[s]" and an "invidious classification based on the alienage status of [her] spouse," section 6428(g) should be subjected to strict scrutiny and found "unconstitutional as written and as applied."  (*Id*. at p. 23).  However, as we

---

[5] The United States intends to file a motion to dismiss plaintiff's complaint for lack of jurisdiction.  By filing this opposition, the United States does not waive any additional bases for dismissal that it may raise.

explain, any distinctions in section 6428(g) are subject to rational-basis review, and the burden is on plaintiff to overcome the presumption of constitutionality.  She has failed to do so.

                  (i)      <u>Section 6428(g) does not implicate plaintiff's right to marry</u>

Plaintiff argues that she is likely to prevail on the merits of her claims because her claims implicate "sensitive and fundamental personal rights"--specifically, her fundamental right to marriage--requiring this Court to "exercise strict scrutiny."  (ECF 11 at p. 22.)  "[T]he fundamental right to marriage . . . is properly understood as including the right to marry an individual of one's choice."  *Latta v. Otter*, 771 F.3d 456, 477 (9th Cir. 2014) (Reinhardt, J., concurring).  Plaintiff is already married and cannot contend that the CARES Act prevented her from marrying an individual of her choosing.  Nor can she deny that she could qualify for a CARES Act credit if she were unmarried or if she chose to file a separate tax return from her spouse.

Her claim, then, must be that section 6428(g) impermissibly distinguishes between groups of married people--specifically, between couples in which only one spouse has an SSN and couples in which both spouses have SSNs--or between married and unmarried individuals.  Such distinctions do not warrant any sort of heightened scrutiny: the Supreme Court has long distinguished between statutes that implicate the fundamental right to marriage and statutes that differentiate between groups of married people or between married and unmarried individuals.  Thus, the Supreme Court has held that laws which "interfere directly and substantially with the right to marry" are constitutionally infirm, but "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may be legitimately imposed."  *Zablocki v. Redhail,* 434 U.S. 374, 386-87 (1978).  As such, distinctions based on marital status are subject only to rational-basis review.  *Id.; see also Califano v. Jobst*, 434 U.S. 47, 53-54 (1977).

14

In *Aleman v. Glickman,* 217 F.3d 1191, 1201 (2000), for example, the Ninth Circuit determined that a federal food stamps provision that distinguished between noncitizen spouses of citizens whose marriages ended in divorce and noncitizen spouses of citizens whose marriages ended in death did not interfere directly and substantially with the right to marry and was therefore subject to rational-basis review. Likewise, in *In re Talmadge*, 832 F.2d 1120, 1126 & n.3 (9th Cir. 1987) the Ninth Circuit upheld a California statute that limited married individuals to one exemption in bankruptcy where, if the individuals were not married, they would have been entitled to two. The court determined that the distinction did not implicate a fundamental right, was subject only to rational-basis review, and permissible because the California legislature may have had a reasonable explanation for making it. *Id*. at 1125-26.

*Talmadge* cited the Second Circuit's decision in *Druker v. Commissioner*, 697 F.2d 46, 50 (2d Cir. 1982). There, the Second Circuit considered a challenge under the Fourteenth Amendment's Equal Protection clause to the so-called "marriage penalty" embedded in the Internal Revenue Code, which causes certain married individuals to pay more taxes than they would if they were unmarried. The court held that the mere fact that tax rates have differently affected particular groups is not unconstitutional. *Id*. at 50. The court acknowledged that the "marriage penalty" has "some adverse effect on marriage." *Druker*, 697 F.2d at 50. Nevertheless, the "adverse effect of the 'marriage penalty,' . . . is merely 'indirect'; while it may to some extent weight the choice whether to marry, it leaves the ultimate decision to the individual." *Id.* (citation omitted). Because the Second Circuit determined that the tax rate structure places "'no direct legal obstacle in the path of persons desiring to get married,'" and "the 'marriage penalty' is most certainly not 'an attempt to interfere with the individual's freedom [to marry],'" it concluded that Congress was entitled to enact a policy that penalizes some dual-income couples and that such a choice would even survive strict scrutiny were it to apply. *Druke*r, 697 F.2d at 50 (citing *Zablocki*, 434 U.S. at 387 n.12 & *Jobst*, 434 U.S. at 54).

15

Numerous tax benefits and obligations distinguish based on marital status.  For example, the Internal Revenue Code permits several filing statuses, each subject to different tax rates and other provisions, based on marital status.  *See* 26 U.S.C. §§ 1(a) (married individuals filing joint returns and surviving spouses); 1(b) (heads of household); 1(c) (unmarried individuals); 1(d) (married individuals filing separate returns).  Federal courts have consistently rejected constitutional claims where, for federal tax purposes, married couples are treated differently than unmarried couples or certain married couples are treated differently than other married couples.  *See Druker*, 697 F.2d at 50; *Mapes v. United States*, 576 F.2d 896, 900, 901-03 (Ct. Cl. 1978) (applying rational-basis review and holding that differential tax effect between married couples was constitutionally permissible*); Schinasi v. Commissioner*, 53 T.C. 382 (1969) (holding that 26 U.S.C. § 6013(a)(1) was reasonable and did not violate the Constitution in precluding individuals married to nonresident aliens from filing joint federal tax returns); *see also Barter v. United States*, 550 F.2d 1239, 1240 (7th Cir. 1977) ("We agree with the district court that the inequities asserted to inhere in the 'marriage penalty,' whatever may be their persuasiveness as arguments for legislative change, do not rise to the level of constitutional violations of appellants' rights.").

There is no dispute that plaintiff would be eligible to claim the CARES Act credit if she chooses to file her 2020 tax return using the married filing separately status and otherwise qualifies.  Thus, plaintiff's constitutional claim is that she must select a filing status that she would not have otherwise chosen in order to receive the credit.  But all married individuals must weigh the benefits and burdens of whether to file a joint or a separate tax return each tax year.  *See* 26 U.S.C. §§ 1(a) and (c).

As described above, section 6428(g) does not implicate plaintiff's fundamental right to marry; it merely distinguishes, like other provisions in the Internal Revenue Code, between categories of married couples or between married and unmarried

16

1   individuals.[6]  As such, it is subject to rational-basis review.  *See Aleman*, 217 F.3d at

2   1201; *In re Talmadge,* 832 F.2d 1120, 1126 & n.3.

3                    (ii)    Section 6428(g) does not make distinctions based on

4                            alienage, and even assuming *arguendo* it does,

5                            distinctions based on alienage are subject to rational-

6                            basis review

7           Plaintiff argues that section 6428(g) is constitutionally infirm because it

8   discriminates on the basis of her spouse's alienage.  (ECF 11 at p. 20.)  As a threshold

9   matter, section 6428(g) does not distinguish based on alienage; rather, it provides that

10  married couples who elect to file a joint income tax return cannot claim a CARES Act

11  credit unless both spouses have SSNs valid for employment.[7]  But SSNs valid for

12  employment are not issued exclusively to U.S. citizens.  Instead, they are assigned to

13  U.S. citizens, lawful permanent residents, and noncitizens with authorization to work in

14  the United States.  *See* 42 U.S.C. § 405(c)(2)(B)(i)(I) and (III); 20 C.F.R. § 422.104

15  ("Who can be assigned a social security number").  As such, lawful permanent residents

16  and noncitizens with SSNs valid for employment can qualify for a CARES Act credit or

17  receive an advance refund.

18          In contrast, ITINs are identifying numbers issued by the IRS that are available to

19  nonresident and resident aliens (as well as the spouses and dependents of those aliens)

20  who have a reporting requirement under the Internal Revenue Code but cannot qualify

21

22          [6] As an example, assume that in 2020 a married individual has an adjusted gross

23  income of $75,000, and her spouse has an adjusted gross income of $125,000.  If the
    individual filed her 2020 tax return using the married filing separately status, she would

24  qualify for a CARES Act credit.  *See* 26 U.S.C. § 6428(c)(3).  If she filed using the
    married filing jointly status, however, she would not.  *See* 26 U.S.C. § 6428(c)(1).

25          [7] The CARES Act's SSN restrictions are not unique in the Internal Revenue

26  Code.  The Economic Stimulus Act of 2008, Pub. L. No. 110-185, 122 Stat. 613 (Feb.
    13, 2008), and 1996 amendments to the EIC, 26 U.S.C. § 5, use substantially similar

27  language to bar tax credits to those who fail to provide SSNs on their income tax return.
    And since 2017, the CTC, like the EIC and the CARES Act credit, has distinguished

28  between children with and without SSNs.  From 2018 through 2025, the Code allows a
    individual to claim a larger CTC for a child with an SSN.  *See* 26 U.S.C. § 24(h)(7).

for an SSN.  26 C.F.R. § 301.6109-1(d)(3); *see Hansen v. Dep't of Treasury*, 528 F.3d 598, 599 (9th Cir. 2007).  ITINs are generally held by noncitizens living and working in the United States without work authorization.  They are also held by individuals who live outside the United States but are required to have an identification number for tax purposes, such as individuals with U.S.-source investment income.  *See* Congressional Research Service, Report R43840, "Federal Income Taxes and Noncitizens: Frequently Asked Questions" at 3-5 (updated December 31, 2014).

Holding an SSN valid for employment, then, tracks work authorization in the United States more closely than it does United States citizenship.  *See* Congressional Research Service, Report R46339, "Unauthorized Immigrants' Eligibility for COVID-19 Relief Benefits: In Brief" (updated May 7, 2020) at 5-6 (SSNs are "typically issued to U.S. citizens, lawful permanent residents, and noncitizens with work authorization").  Plaintiff cites no authority suggesting that a federal classification based on work authorization implicates her civil rights.  Moreover, plaintiff does not challenge section 6428(d)(1)'s exclusion of nonresident aliens[8] from receiving a CARES Act credit.  And, in any event, to the extent that the SSN requirement in 6428(g) distinguishes between resident aliens and nonresident aliens, distinctions between individuals in those categories in the Tax Code have been consistently upheld.  *See Hofstetter v. Commissioner*, 98 T.C. 695 (1992); *Schinasi v. Commissioner*, 53 T.C. 382 (1969); *see also Barr v. Commissioner*, 51 T.C. 693 (1969).

As we have explained, the CARES Act's SSN requirement is not a distinction based on alienage, since lawful permanent residents and noncitizens with work

---

[8] "[F]or federal tax purposes, a noncitizen is classified as a resident or nonresident alien, regardless of whether he or she is in the United States as an immigrant or nonimmigrant, or is in the United States unlawfully. This classification is for federal tax purposes only and does not affect the individual's immigration status."  *See* Congressional Research Service, Report R43840, "Federal Income Taxes and Noncitizens: Frequently Asked Questions" at 1 (updated December 31, 2014); *see also* IRS Publication 519, available at https://www.irs.gov/pub/irs-pdf/p519.pdf (last accessed May 22, 2020.).

1    authorization can obtain an SSN and qualify for a CARES Act credit.  Even assuming

2    *arguendo* the requirement is a distinction based on alienage, the Supreme Court

3    recognizes that the federal government has "broad, undoubted power over the subject of

4    immigration and the status of aliens." *Arizona v. United States,* 567 U.S. 387, 394

5    (2012) (citing *Toll v. Moreno*, 458 U.S. 1, 10 (1982)).  When federal law classifies

6    individuals on the basis of alienage, rational-basis review applies.[9]  *See Mathews v. Diaz*,

7    426 U.S. 67, 81-85 (1976).  Thus, in considering the food stamps provision in *Aleman,*

8    217 F.3d at 1201, the Ninth Circuit held that Congress had differentiated between groups

9    of aliens and that the provision was subject to rational-basis review.

10        In sum, section 6428(g) is not a classification based on alienage.  Even assuming

11   *arguendo* that it is, it would be subject to rational-basis review.  *See Aleman*, 217 F.3d at

12   1201.

13                        (iii)    <u>Plaintiff cannot show a likelihood of success on the</u>

14                                 <u>merits because section 6428(g) is subject to rational-</u>

15                                 <u>basis review and plaintiff does not meet her burden to</u>

16                                 <u>show it is unconstitutional</u>

17        Plaintiff argues that she will prevail on the merits because section 6428(g) "is

18   subject to strict scrutiny and thus is unconstitutional as written and applied."  (ECF 11 at

19   p. 23.)  But as we have shown, section 6428(g) is subject to rational-basis review.

20   Plaintiff does not explain how the section would not survive rational-basis review, much

21   less meet her burden to overcome its presumption of constitutionality.

22        Acts of Congress, including the CARES Act, are presumed to be

23   constitutional.  *See INS v. Chadha*, 426 U.S. 919, 944 (1983); *Nat'l Fed'n of Indep. Bus.*

24   *v. Sebelius*, 567 U.S. 519, 563 (2012) ("'[E]very reasonable construction must be

25   resorted to, in order to save a statute from unconstitutionality.'") (quoting *Hooper v.*

26

27        [9] Plaintiff cites *Graham v. Richardson*, 403 U.S. 365, 372 (1971) for the
     proposition that that the federal tax provision at issue is subject to strict scrutiny.  That
28   case, however, dealt with a state classification based on alienage.

*California*, 155 U.S. 648, 657 (1895)).  "Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes."  *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 547 (1983) (rejecting an equal protection challenge to a federal tax classification).  Indeed, "[n]o scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact."  *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 41 (1973).  Thus, "[i]n such a complex arena in which no perfect alternatives exist," courts cannot "impose too rigorous a standard of scrutiny lest all [] fiscal schemes become subjects of criticism under the Equal Protection Clause."  *Id.*  Rather, "within the limits of rationality, the legislature's efforts to tackle problems should be entitled to respect."  *Id.* at 42; *see United States v. Md. Savings-Share Ins. Corp.,* 400 U.S. 4, 6 (1970) (tax classifications are generally presumed to constitutional if a rational basis is demonstrated or perceived by a court).

"[R]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'"  *Aleman v. Glickman*, 217 F.3d 1191, 1200 (9th Cir. 2000) (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)) (internal quotation omitted).  When reviewing a provision under rational-basis review "'a statutory classification . . . must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Id.* at 1201 (quoting *FCC* v. *Beach Communications*, 508 U.S. 307, 313 (1993)).  The government "has no obligation to produce evidence to sustain the rationality of a statutory classification"; rather, "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."  *Heller,* 509 U.S. at 320; *see also Fournier v. Sebelius*, 718 F.3d 1110, 1123 (9th Cir. 2013).

As we have explained, plaintiff's constitutional claims are subject to rational-basis review, rather than strict scrutiny.  Plaintiff mentions in passing that section 6428(g)

20

would not survive rational-basis review (ECF 11 at p. 20), but does not explain the basis for her assertion, much less meet her burden to "negative every conceivable basis which might support it" and overcome the Act's presumption of constitutionality.[10]  *See Aleman*, 217 F.3d at 1201.  Accordingly, plaintiff has not established a likelihood of success on the merits of her constitutional claims.

*     *     *

In sum, plaintiff has not established that she is likely to succeed on the merits of her claims.  This Court lacks jurisdiction over her claims because she does not have standing, her claims are not ripe, and she must first seek relief via the refund provisions of 26 U.S.C. § 7422.  In addition, plaintiff has not demonstrated she is likely to succeed on the merits, as the distinctions drawn in the CARES Act are subject to rational-basis review, and plaintiff does not meet her burden to show the distinctions would not survive under that standard.

2.  The second *Winter* factor is irreparable injury.

Plaintiff argues that she will suffer irreparable injury for three separate reasons, none of which provides the requisite harm for a preliminary injunction.

First, plaintiff contends that she has been irreparably injured because section 6428(g) implicates her "First Amendment rights to freedom of privacy" by discriminating against her based on whom she chose to marry.  As we have discussed above, however, section 6428(g) does not implicate plaintiff's right to marry; rather, it distinguishes between classes of married individuals based on the filing status they select.  Accordingly, plaintiff does not establish irreparable harm to her First Amendment rights.

---

[10] Indeed, it is unclear how plaintiff could ever meet her burden.  Plaintiff can obtain the CARES Act credit if she files a separate return from her spouse.  Congress could have reasonably used the prohibition on joint filing in section 6428(g) as a means to reconcile section 6428(a)(1)'s provision of $2,400 credits to eligible joint filers with section 6428(d)(1)'s exclusion of nonresident aliens.  Whether Congress could have selected a different method to achieve the same result is not at issue.  *See Nat'l Fed'n of Indep. Bus. v. Sebelius,* 567 U.S. 519, 563 (2012); *Brushaber v. Union P.R. Co.,* 240 U.S. 26 (1916).

Second, plaintiff argues (ECF 11 at p. 25) that she has been irreparably injured by the economic struggles she is facing as a result of the pandemic and her ineligibility to receive an advance refund immediately.  The CARES Act, however, does not establish any right to receive an immediate advance refund.  And while the United States does not seek to diminish the economic hardship that plaintiff is facing, as a matter of law, economic injury does not constitute irreparable harm providing a basis for injunctive relief.  *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (internal quotations omitted); *Hughes v. United States*, 953 F.2d 531, 536 (9th Cir. 1992) (economic hardship does not constitute irreparable harm).

Third, plaintiff argues that she is irreparably injured because filing separately from her spouse would harm his chances of receiving permanent resident status.  (ECF 11 at p. 25).  But plaintiff can file a joint return for immigration purposes, then file an administrative claim for the CARES Act credit alleging she was unconstitutionally deprived of the credit.  Moreover, as plaintiff concedes, income tax forms are only one of many factors relied upon in evaluating whether a marriage is valid for immigration purposes.  (*See* ECF 11 at p. 26 (citing *In Matter of Laureano*, 19 I & N. Dec. 1, 1 (B.I.A. Dec. 12, 1983)).

In sum, plaintiff does not demonstrate irreparable injury warranting injunctive relief.  *See Winter*, 555 U.S. at 22.

> 3 & 4.  The third and fourth *Winter* factors are the balancing of the hardships and the public interest.

Plaintiff merges her discussion of the balance of the hardships and the public interest.  She alleges these factors favor her because of the strong public interest in protecting constitutional rights.  (ECF 11 at p. 27).  As we have shown above, plaintiff has not shown a likelihood of prevailing on the merits of her constitutional claims.

Plaintiff alleges that the immigration status of her spouse could be impacted by filing separate returns, thereby creating a hardship.  (ECF 11 at pp. 27-28).  But as we have explained, plaintiff can file a joint 2020 tax return and pursue her constitutional claims administratively, mitigating the alleged hardship regarding her spouse's immigration status.  Additionally, plaintiff could file a separate return and rely on other evidence for immigration purposes.

Plaintiff also alleges that filing separate returns would create a hardship in the form of additional expenses and a higher tax liability.  (ECF 11 at pp. 27-28.)  The fact that plaintiff, like all other married individuals, must evaluate the benefits and burdens of two potential filing statuses is not a hardship weighing in favor of injunctive relief.[11]

Plaintiff incorrectly alleges there is "no harm to the defendants" if an injunction is issued (ECF 11 at p. 27).  But she is mistaken: the orderly administration of the tax laws is also in the public interest.  CARES Act credits and the advance refunds thereof are part of a larger system of Congressional enactments and tax administration that endeavors to apply the tax laws consistently.  Plaintiff and similarly situated individuals make up one of the groups of individuals who will have to wait until 2021 to claim a CARES Act credit because there is no statutory entitlement to an advance refund of the credit.  The Supreme Court has long held all individuals seeking refunds must comply with the requirements Congress established in 26 U.S.C. § 7422.  Consistent application of the tax laws serves the public interest.

*      *      *

In sum, plaintiff has not met her burden of showing a temporary restraining order or preliminary injunction is warranted.  She cannot demonstrate a likelihood of success on the merits because her claims are premature and she lacks standing, this Court lacks

---

[11] With respect to plaintiff's contention that she cannot afford to file additional returns, the IRS offers free file software for individuals with income below $69,000.  *See* https://www.irs.gov/e-file-providers/about-the-irs-free-file-program.

jurisdiction over her claims, and she has not demonstrated she will likely prevail on her constitutional claims.  She also has not demonstrated irreparable injury because her injuries are economic.  Lastly, she has not shown that the balance of the hardships and the public interest favor relief.  Her application for a temporary restraining order or preliminary injunction should be denied.

### B.   Plaintiff's Application for Class Certification Should be Denied

Plaintiff asks this Court to certify a class (or in the alternative, a provisional class for purposes of her application) of individuals composed of "All United States Citizens married to immigrants that file joint taxes wherein the immigrant-spouses file tax returns using an Individual Taxpayer Identification Number who have otherwise qualified for the Stimulus Check."  (ECF 11-1 p. 3).  This request should be denied.

Class certification is premature.  The United States has not responded to the complaint or taken discovery from the plaintiff on any issue, including whether she is an adequate class representative.  Given plaintiff's anonymity, it is unclear whether she would qualify for a CARES Act credit if her spouse had an SSN.  Nor has plaintiff presented any evidence sufficient to identify class members.  Further, conditional class certification is not required to preserve the relative positions of the parties, and none of the injunctive and declaratory relief that plaintiff seeks necessitates class certification at this time.

Additionally, the proposed class bears little relation to the individuals allegedly excluded from the tax credit authorized by the CARES Act.  The proposed class has not "otherwise qualified for [a] Stimulus Check" (advance refund) because the CARES Act did not create any entitlement to one.  It is true that the Act directs the IRS to issue an advance refund of the 2020 CARES Act credit to individuals who would qualify based on prior year tax information, but the amount of any advance refund will be ultimately reconciled with the CARES Act credit claimed on the individual's 2020 tax return.  26 U.S.C. § 6428(e)(1).  Eligibility for the credit and the amount of the credit will depend

on information that has not been determined, including the filing status that the individual will select on her 2020 tax return, *see* 26 U.S.C. § 6428(a)(1); the number of qualifying children she has, *see* 26 U.S.C. § 6428(a)(2); her adjusted gross income, *see* 26 U.S.C. § 6428(c); whether she will be married as of December 31, 2020, *see* 26 U.S.C. § 6428(c); and whether she or her spouse will be a member of the Armed Forces of the United States at any point during the year, see 26 U.S.C. § 6428(g)(3). Indeed, some members of the proposed class may in 2021 elect to file a separate return from their spouses in order to qualify for the CARES Act credit or for another reason. The proposed class would therefore include some individuals who will eventually claim and qualify for a CARES Act credit.

The Court should postpone any decision on class certification to permit the detailed factual inquiry that is required to determine whether certification is appropriate.

## V. CONCLUSION

Plaintiff has not established that she is entitled to a temporary restraining order or preliminary injunction. Her application should be denied.

Dated: May 26, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

    /s/ John D. Ellis
MELISSA BRIGGS
JOHN D. ELLIS
Assistant United States Attorneys

Attorneys for the United States of America