NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
MELISSA BRIGGS (Cal. Bar No. 320697)
JOHN D. ELLIS (Cal. Bar No. 322922)
Assistant United States Attorneys
        Federal Building, Suite 7211
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone:   (213) 894-6165
                     (213) 894-2740
        Facsimile:   (213) 894-0115
        E-mail:      melissa.briggs2@usdoj.gov
                     john.ellis3@usdoj.gov

Attorneys for the
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JANE DOE, et al., | No. 8:20-cv-00858-SVW-JEM |
| Plaintiffs, | Initial Brief pursuant to July 13, 2020, Order (ECF 50) |
| v. | Hearing Date:    August 3, 2020 |
| DONALD J. TRUMP, et al., | Time:            1:30 p.m. |
| Defendants. | Location:        Conducted telephonically |
| | Hon. Stephen V. Wilson |

The United States of America (Government) hereby submits its brief in accordance with this Court's order dated July 13, 2020 (ECF 50).

Dated: July 20, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

___/s/ John D. Ellis_____
MELISSA BRIGGS
JOHN D. ELLIS
Assistant United States Attorneys

Attorneys for the
United States of America

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................... 1

II. ARGUMENT ......................................................................................... 1

    A.    Plaintiffs bear the burden of negating every possible rational basis for section 6428(g); the Government has no burden ...................................1

    B.    Section 6428(g) does not run afoul of equal protection guarantees because its exclusion of SSN holders who file joint tax returns with their spouses without work-authorized SSNs is not irrational ...................2

        1.    Background: Income tax concepts embedded in the Internal Revenue Code ........................................................................5

        2.    Background: The CARES Act .........................................................6

        3.    Congress could have reasonably excluded SSN holders who filed joint returns with non-SSN holders from receiving advance refunds ..................................................................................9

            *a.*    Administrative considerations relating to adjusted gross income may explain plaintiffs' exclusion from the advance refund scheme…………………….…………...........................10

            *b.*    Congress may have also excluded plaintiffs from the advance refund scheme in order to effectuate the reconciliation provisions in section 6428(e)(2)..………………..……....…13

            *c.*    Congress may have believed section 6428(g) was necessary to effectuate section 6428(d)'s exclusion of nonresident aliens…………………………………………......13

    C.    Congress could reasonably have adopted language in section 6428(g) from other Code provisions which exclude SSN holders who file joint tax returns with non-SSN holders from receiving tax credits........................................14

    D.    Plaintiffs' action should be dismissed with prejudice and without discovery ........................................................................................18

III. CONCLUSION ....................................................................................19

i

# TABLE OF AUTHORITIES

**CASES**

*Alcaraz v. Block*, 746 F.2d 593 (9th Cir. 1984) ...............................................4, 9-10

*Aleman v. Glickman*, 217 F.3d 1191 (9th Cir. 2000) ............................. 2, 4, 9, 12, 17-18

*Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053 (9th Cir. 2018) .............. 2, 14-15

*Armour v. City of Indianapolis, Ind.*, 566 U.S. 673 (2012) ........................... 3, 10, 14, 17

*Crawford v. Antonio B. Won Pat Int'l Airport Auth.*,

     917 F.3d 1081 (9th Cir. 2019) ................................................................... 3

*FCC v. Beach Communications*, 508 U.S. 307 (1993) ................................ 2-3, 14, 17-18

*Fortuna Enterprises, L.P. v. City of Los Angeles*,

     673 F. Supp. 2d 1000 (C.D. Cal. 2008) ..............................................3, 14

*Hooper v. California*, 155 U.S. 648 (1895) .................................................... 1-2

*Heller v. Doe*, 509 U.S. 312 (1993) .................................................. 2, 4, 17-18

*INDOPCO, Inc. v. Commissioner*, 503 U.S. 79 (1992) .................................... 6

*INS v. Chadha*, 462 U.S. 919 (1983) ......................................................... 1

*Knight v. Commissioner*, 552 U.S. 181 (2008) ...................................... 5, 11

*Krishna Lunch of S. Cal. v. Gordon*, 797 F. App'x 311 (9th Cir. 2020) ........................ 2

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011 (9th Cir. 2010) .............. 3

*Mathews v. Diaz*, 426 U.S. 67 (1976) .......................................................... 9

*Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456 (1981) ........................... 3

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ............................... 1

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ................................................ 5, 18

*New York City Transit Auth. v. Beazer*, 440 U.S. 568 (1979) .......................... 4

*Personnel Administrator v. Feeney*, 442 U.S. 256 (1979) ............................. 12

*Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983) ............. 12

*Romer v. Evans*, 517 U.S. 620 (1996) ...................................................... 3

*RUI One Corp. v. City of Berkeley,* 371 F.3d 1137 (9th Cir. 2004) ........................ 3, 14

*Salameh v. Tarsadia Hotel*, 726 F.3d 1124 (9th Cir. 2013) ........................................ 19

*Trump v. Hawaii*, -- U.S. --, 138 S. Ct. 2392 (2018) ...................................................... 3

*United States v. Mayea-Pulido*, 946 F.3d 1055 (9th Cir. 2020) ..................................... 3

*U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166 (1980)........................................................... 18

*Vance v. Bradley*, 440 U.S. 93 (1979) ....................................................................... 4-5

## PUBLIC LAWS

Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. 116-136

  (March 27, 2020) ................................................................................. 6

The Economic Stimulus Act of 2008, Pub. L. No. 110-185, 122 Stat. 613

  (Feb. 13, 2008) ................................................................................. 16

Heroes Earnings Assistance and Relief Tax Act of 2008, Pub L. No. 110-245,

  122 Stat. 1624 (June 17, 2008) ........................................................... 17

Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub L. No.

  104-193, 110 Stat. 2105 (Aug. 22, 1996) ............................................ 15

## STATUTES

### Internal Revenue Code, 26 U.S.C.

  § 1 ....................................................................................................5

  § 2 ....................................................................................................5

  § 24 ............................................................................................... 6-8

  § 32 ............................................................................................. 6, 15

  § 61 ..................................................................................................5

  § 62 ............................................................................................ 6, 11

  § 63 ................................................................................................5-6

  § 112 ............................................................................................... 12

  § 6013 .......................................................................................... 5, 14

iii

§ 6428 ............................................................................ passim

§ 7508 ................................................................................ 12

**REGULATIONS**

26 C.F.R. § 1.112-1 ........................................................... 12

**LEGISLATIVE HISTORY**

Joint Comm. on Taxation, Description of the Tax Provisions of Public Law 116-136,
  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, JCX-12R-
  20 9 (April 2020) ............................................................. 15

Joint Comm. on Taxation, Technical Explanation of the Revenue Provisions of H.R.
  5140, the "Economic Stimulus Act of 2008" as Passed by the House of
  Representatives and the Senate on February 7, 2008, JCX-16-08 (February
  2008) ............................................................................ 17

Joint Comm. on Taxation, Description of the Chairman's Modification to the Provisions
  of the "Economic Stimulus Act of 2008," JCX-11-08 2 (January 2008) ............. 17

Joint Comm. on Finance, Budget Reconciliation Recommendations of the Committee on
  Finance, 25-735 (July 1996) .................................................. 16

Joint Comm. on Taxation, Description of Tax Provisions Included in a Plan to Achieve a
  Balanced Budget Submitted to the Congress by the President on January 6, 1996,
  JCX-1-96 (January 1996) ...................................................... 16

Joint Comm. on Taxation, Description of the Tax and Health Insurance Reform
  Provisions in the President's Seven-Year Balanced Budget Proposal Released on
  December 7, 1995, JCX-58-95, at 14 (December 1995) ........................... 16

Joint Comm. on Taxation, Present Law and Issues Relating to the Earned Income Credit,
  JCX-24-95, at 8 (June 1995) .................................................. 16

iv

H.R. Rep. No. 104-725 (1996) (Conf. Rep.) ..................................................... 16

H.R. Rep. No. 104-651 (1996) ........................................................................ 16

166 Cong. Rec. 61, H1840-41 (daily ed. March 27, 2020) ............................... 15

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I. INTRODUCTION

This Court has determined that plaintiffs' equal protection claim is subject to rational-basis review and accordingly ordered the parties to submit briefing as to whether 26 U.S.C. § 6428(g) withstands such review.  It does.

In conducting its rational-basis review, this Court must determine whether Congress may have had a legitimate reason for excluding plaintiffs from the advance refund scheme in section 6428(g) based on plaintiffs' filing of joint tax returns with individuals who were not authorized to work in the United States and therefore ineligible for refunds or credits under section 6428.  Plaintiffs bear the burden of demonstrating that section 6428(g) is not rationally related to a legitimate governmental interest.  The Government, in contrast, has absolutely no evidentiary burden.  In any event, plaintiffs have not shown--and indeed, cannot show--that section 6428(g) is not related to a legitimate governmental interest.  That is because there are a number of permissible reasons, including administrative considerations relating to adjusted gross income, why Congress may have included the provision.  Moreover, in enacting section 6428(g), Congress likely borrowed from a tried-and-true statutory scheme that has been in place since 1996, which is a rational basis in and of itself.  Lastly, because rational-basis review applies, no discovery is required.

## II. ARGUMENT

### A. Plaintiffs bear the burden of negating every possible rational basis for section 6428(g); the Government has no burden

Acts of Congress, including section 6428(g), are presumed to be constitutional.  *See INS v. Chadha*, 462 U.S. 919, 944 (1983); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 563 (2012) ("[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality.") (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)).  The Government "has no obligation to produce evidence to

1

sustain the rationality of a statutory classification"; rather, "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Heller v. Doe,* 509 U.S. 312, 320 (1993) (internal quotations omitted). Thus, the burden is on plaintiffs to negate every single permissible basis on which Congress might have enacted section 6428(g) in order to overcome the provision's presumption of constitutionality. *See Aleman v. Glickman,* 217 F.3d 1191, 1201 (9th Cir. 2000) (quoting *Heller*, 509 U.S. at 320); *see also Krishna Lunch of S. Cal. v. Gordon*, 797 F. App'x 311, 314 (9th Cir. 2020) (citing *Heller*, 509 U.S. at 320-21, and affirming dismissal under rational-basis review although no actual reason for challenged policy had ever been posited). The Government, in contrast, has no evidentiary burden.

Moreover, no evidence is required as to Congress's intent in passing section 6428(g). Nor is fact-finding by the Court required to determine whether a rational basis exists for the classification. The Supreme Court has held that it "never require[s] a legislature to articulate its reasons for enacting a statute," and that "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *F.C.C. v. Beach Commc'ns, Inc. (Beach)*, 508 U.S. 307, 314-15 (1993). Thus, the Supreme Court has held "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* at 315.

**B.    Section 6428(g) does not run afoul of equal protection guarantees because its exclusion of SSN holders who file joint tax returns with their spouses without work-authorized SSNs is not irrational**

A classification subject to rational-basis review "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1060 (9th Cir. 2018) (quoting *Heller,* 509 U.S. at 320). Under rational-basis review, a court must uphold a classification against an equal protection challenge "if

2

1 there is any reasonably conceivable state of facts that could provide a rational basis" for
2 the classification. *United States v. Mayea-Pulido*, 946 F.3d 1055, 1059 (9th Cir. 2020)
3 (quoting *Beach*, 508 U.S. at 313); *see also Johnson v. Rancho Santiago Cmty. Coll.*
4 *Dist.*, 623 F.3d 1011, 1031 (9th Cir. 2010).

5        In determining whether there is a rational basis for the challenged classification,
6 this Court need not determine the actual motivation of Congress or engage in fact-
7 finding as to the rationality of Congress's conceivable motives. *See Beach,* 508 U.S. at
8 313; *RUI One Corp. v. City of Berkeley,* 371 F.3d 1137, 1155 (9th Cir. 2004); *see also*
9 *Fortuna Enterprises, L.P. v. City of Los Angeles*, 673 F. Supp. 2d 1000, 1013-14 (C.D.
10 Cal. 2008). Rather, a challenged provision will withstand rational-basis review if "there
11 is a plausible policy reason for the classification, the legislative facts on which the
12 classification is apparently based rationally may have been considered to be true by the
13 governmental decisionmaker, and the relationship of the classification to its goal is not
14 so attenuated as to render the distinction arbitrary or irrational." *Armour v. City of*
15 *Indianapolis, Ind.*, 566 U.S. 673, 681 (2012) (internal quotation and citation omitted).
16 Thus, "the inquiry is not whether the challenged action actually further[ed] a legitimate
17 interest; it is enough that the governing body could have rationally decided that the
18 action would further that interest." *Crawford v. Antonio B. Won Pat Int'l Airport Auth.*,
19 917 F.3d 1081, 1095 (9th Cir. 2019) (emphasis omitted) (quoting *Minnesota v. Clover*
20 *Leaf Creamery Co.*, 449 U.S. 456, 466 (1981)). Accordingly, statutes "hardly ever" fail
21 rational-basis review, and only do so when it "is impossible to 'discern a relationship to
22 [a] legitimate state interest[]' or the policy is 'inexplicable by anything but animus.'"
23 *Trump v. Hawaii*, -- U.S. --, 138 S. Ct. 2392, 2420-21 (2018) (quoting *Romer v. Evans*,
24 517 U.S. 620, 632, 635 (1996)).

25        To survive rational-basis review, a statute must not be crafted with surgical
26 precision; rather, a classification will survive rational-basis review even if it is both
27 underinclusive and overinclusive. *See Vance v. Bradley*, 440 U.S. 93, 108 (1979); *see*

28

3

*also New York City Transit Auth. v. Beazer*, 440 U.S. 568, 593 (1979) ("[I]t is of no constitutional significance that the degree of rationality is not as great with respect to certain ill-defined subparts of the classification as it is with respect to the classification as a whole."). "The demand for perfection must inevitably compromise with the hard facts of political life." *Vance*, 440 U.S. at 93 n.26 (citation omitted). Accordingly, "[a] classification does not fail rational-basis review simply because it is not made with mathematical nicety or because in practice it results in some inequality." *Aleman*, 217 F.3d at 1201 (internal quotations omitted). In short, a statutory scheme need not be "a model of legislative logic" in order to survive rational-basis review. *See id*.

Moreover, the fact that harsh consequences may result from the statutory provision is immaterial as long as a rational basis exists for the classification. *See Aleman*, 217 F.3d at 1201 ("Although this classification . . . can operate quite harshly to deprive deserving persons of the means of subsistence, we are compelled to conclude that it survives the exceedingly low level of judicial scrutiny mandated by the rational basis test."); *Alcaraz v. Block*, 746 F.2d 593, 605 (9th Cir. 1984) ("Equal protection analysis properly deals with the bona fides of the bases of certain legislative classifications. All legislation classifies and affects what parties view as 'weighty' interests. But the weightiness of the interests affected only goes to the law's effect on the people classified, not to the legitimacy of the classification itself. An equal protection theory that looked merely to the weightiness of interests affected would thus conflate the validity of the lines the law has drawn with the effect of those lines on various constituencies.")

Finally, "[r]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Aleman*, 217 F.3d at 1200 (quoting *Heller*, 509 U.S. at 319). Such a deferential standard of review is required when Courts review statutes based on rational-basis review because the "Constitution presumes that, absent some reason to infer antipathy, even improvident

4

decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted."' *Nordlinger v. Hahn*, 505 U.S. 1, 17-18, (1992) (quoting *Vance*, 440 U.S. at 97).

          1.    <u>Background: Income tax concepts embedded in the Internal Revenue Code</u>

Computing an individual's federal income tax liability is a multistep endeavor. The first step is selecting a filing status. *See* 26 U.S.C. § 1(a)-(d). Some individuals, such as unmarried individuals with no dependents, have only one filing status--single-- available to them. *See* 26 U.S.C. § 1(c). Other individuals have options. An individual who is married as of December 31 of the tax year, for instance, may have as many as three filing statuses from which to select. Such an individual may elect to file a joint tax return with her spouse. *See* 26 U.S.C. § 1(a). Or she may elect to file a separate tax return from her spouse. *See* 26 U.S.C. § 1(d). Lastly, she may, in certain instances not relevant here, be treated as unmarried and elect to file using the head of household filing status. *See* 26 U.S.C. §§ 1(b), 2(b).

Each filing status is associated with graduated tax rates set by Congress. 26 U.S.C. § 1(a)-(d). The ultimate amount of tax an individual must pay is based on her "taxable income," which is a defined term in the Internal Revenue Code (Title 26, U.S.C.). *See* 26 U.S.C. §§ 1, 63. Computing taxable income "begins with a determination of 'gross income,' capaciously defined as 'all income from whatever source derived.'" *Knight v. Commissioner*, 552 U.S. 181, 184 (2008) (quoting 26 U.S.C. § 61(a)). For married individuals filing a joint return, gross income will include the income received by both spouses. *See* 26 U.S.C. § 6013(d)(3) ("if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several").

Many tax benefits, including the earned income credit (EIC), 26 U.S.C. § 32, and child tax credit, 26 U.S.C. § 24, are computed, at least in part, using a taxpayer's adjusted gross income. *See* 26 U.S.C. §§ 32(f)(2) and 24(b). To arrive at adjusted gross income, gross income is reduced by any "above-the-line" deductions for which a taxpayer qualifies. *See* 26 U.S.C. § 62(a); *Knight*, 552 U.S. at 184. Above-the-line deductions include (among other things) certain educator expenses, losses from the sale or exchange of property, deductions attributable to rents and royalties, and retirement savings deductions. *See* 26 U.S.C. § 62(a). Like income, above-the-line deductions are aggregated for joint filers. Such deductions are "matters of legislative grace," and a taxpayer must both claim the deduction and demonstrate that she is entitled to it in order to receive a tax benefit. *See INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). To finally arrive at taxable income, an individual's adjusted gross income is reduced by "below-the-line" deductions (*i.e.*, allowable deductions other than the above-the-line deductions identified in section 62(a)). *See* 26 U.S.C. § 63; *Knight*, 552 U.S. at 184.

## 2.    Background: The CARES Act

Presumably aware of these income tax concepts, Congress passed and the President signed into law into law the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. 116-136 (March 27, 2020). As suggested by its title, the CARES Act was an economic stimulus program designed to mitigate economic fallout from the worldwide coronavirus pandemic.

The CARES Act added section 6428 to the Internal Revenue Code (Title 26, U.S.C.). Subsection (a) of section 6428 permits an "eligible individual" to receive a refundable tax credit for the 2020 tax year. *See* 26 U.S.C. § 6428(a) ("there shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2020 . . .") *and* (b) (providing that the credit is refundable). An "eligible individual" does not include (among other individuals) any individual who is a

6

nonresident alien.  *See* 26 U.S.C. § 6428(d)(1).  Resident aliens, however, are eligible to receive the credit (assuming they otherwise qualify).  *See id*.

The amount of the CARES Act credit is $2,400 in the case of eligible individuals filing a joint return and $1,200 for all other eligible taxpayers (including single taxpayers or taxpayers who use the married filing separately filing status), subject to a limitation based on adjusted gross income described below.  26 U.S.C. §§ 6428(a), (c).  The credit is increased by $500 for each qualifying child (within the meaning of 26 U.S.C. § 24(c)) of the individual.  26 U.S.C. § 6428(a)(2).

Although the CARES Act credit is based on an individual's 2020 tax year attributes, the IRS may issue a CARES Act credit as an "advance refund or credit."  26 U.S.C. § 6428(f).  Congress directed the IRS to issue such refunds or credits "as rapidly as possible," but not later than December 31, 2020.  The advance refund amount under the statute "is the amount that would have been allowed as credit under this section for such taxable year if [the CARES Act credit provision] . . . had applied to such taxable year."  26 U.S.C. § 6428(f)(2).  Because the advance refunds are computed before the 2020 tax year has ended, subsection (f)(1) directs the IRS to first use an individual's 2019 tax return to determine an individual's eligibility for an advance refund.  If an individual has not filed a 2019 tax return when the IRS makes its determination as to whether an individual should receive an advance refund, the IRS may use the individual's 2018 tax return.  *See* 26 U.S.C. § 6428(f)(5)(A).  Lastly, if the individual has not filed a tax return for 2019 or 2018, the IRS may use information provided for tax year 2019 in Form SSA-1099, Social Security Benefit Statement, or Form RRB-1099, Social Security Equivalent Benefit Statement, to determine the advance refund, if any, that the individual should receive.  *See* 26 U.S.C. § 6428(f)(5)(B).

The amount of any CARES Act credit, whether issued as a credit in 2021 or as an advance refund in 2020, is computed using a taxpayer's adjusted gross income (among other tax attributes).  *See* 26 U.S.C. § 6428(c).  Subsection (c) provides that the amount

7

of the CARES Act credit "shall be reduced (but not below zero) by 5 percent of so much of the taxpayer's adjusted gross income as exceeds $150,000 in the case of a joint return, $112,500 in the case of a head of household, and $75,000 in the case of a taxpayer who does not file a joint return or file using the head of household filing status." *Id*.

Subsection (e) contains two related provisions.  Subsection (e)(1) provides that the amount of any advance refund an individual receives must be reconciled with the CARES Act credit reported on an individual's 2020 tax return.  It specifically provides that the amount of CARES Act credit reported on an individual's 2020 tax return "shall be reduced (but not below zero) by the aggregate refunds and credits made or allowed to the taxpayer under subsection (f)."  26 U.S.C. § 6428(e)(1).  And subsection (e)(2) provides that "in the case of a refund or credit made under subsection (f) with respect to a joint return, half of such refund or credit shall be treated as having been made or allowed to each individual filing such return."   26 U.S.C. § 6428(e)(2).

If the CARES Act credit is issued as an advance refund before December 31, 2020, the amount of the credit will be computed based on the individual's adjusted gross income on the individual's 2019 or 2018 tax return.  *See* 26 U.S.C. § 6428(f)(5).  In that case, the taxpayer will need to reconcile the amount of the advance refund received and the amount of the credit (if any) to which she is entitled.  *See* 26 U.S.C. § 6428(e)(1).  If, on the other hand, the credit is issued after 2020 using the taxpayer's tax return for 2020, the taxpayer will be allowed the entire amount of the credit (subject to the adjusted gross income limitations in subsection (c)).  *See* 26 U.S.C. § 6428(a).

Lastly, section 6428(g) provides that no CARES Act credit shall be allowed to an "eligible individual who does not include on the return of tax for the taxable year" her "valid identification number," "in the case of a joint return, the valid identification number of such individual's spouse," and the valid identification number of any qualifying child "taken into account" for purposes of the credit.  A valid identification number means an SSN that is valid for employment (*see* 26 U.S.C. § 24(h)(7)) or in the

8

case of a qualifying child who is legally adopted or placed for adoption, the adoption taxpayer identification number of such child.  26 U.S.C. § 6428(g)(2).  It thus excludes from the advance refund scheme individuals who hold SSNs valid for employment and filed a joint tax return for 2019 or 2018 (whichever may be the case) with an individual who did not have an SSN valid for employment.

Married individuals filing a joint return in which at least one spouse was a member of the United States military and at least one spouse had an SSN valid for employment during the relevant taxable year are excepted from the general rule in section 6428(g)(1)(B) that in the case of a joint return, the return must include a valid identification number for each spouse.  *See* 26 U.S.C. § 6428(g)(3).  As such, military families who have filed tax returns using the married filing jointly filing status can receive up to the full CARES Act credit amount of $2,400 (plus $500 for each qualifying child) even if only one of the joint filers has an SSN valid for employment.

### 3. Congress could have reasonably excluded SSN holders who filed joint returns with non-SSN holders from receiving advance refunds

Plaintiffs do not challenge the exclusions of their respective spouses from section 6428's advance refund scheme.  Such a challenge would in any event fail: Congress has the power of the purse and may for reasons of fiscal policy condition the provision of benefits on the basis of alienage or work authorization.  *See Mathews v. Diaz*, 426 U.S. 67, 83 n. 22 (1976) ("fiscal integrity" is a legitimate purpose of limiting aliens eligible for benefit); *see also Aleman,* 217 F.3d at 1203 (limiting expenditures on public benefit programs for aliens is a legitimate government purpose); *Alcaraz*, 746 F.2d at 606 (concluding that requiring an SSN for all adult members of a household for a child to be eligible for programs withstood rational-basis review despite discriminating against children of "illegal aliens" because "reducing fraud in entitlement programs preserves limited resources for those who are truly deserving.  More efficient administration of

entitlement programs saves such programs from the ravages of public cynicism that could lead to their repeal.").

The issue, then, is whether Congress might have had a permissible basis for also excluding plaintiffs from the advance refund scheme on the basis that they had filed joint tax returns with individuals who were not authorized to work in the United States and therefore ineligible for refunds or credits under section 6428. The scheme set forth in section 6428, viewed as a whole, suggests a number of permissible reasons why Congress may have elected to deny plaintiffs advance refunds.

> a. *Administrative considerations relating to adjusted gross income may explain plaintiffs' exclusion from the advance refund scheme*

"[A]dministrative considerations can justify a tax-related distinction." *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 682 (2012). These considerations include complexity and cost. *Id.* Congress may have excluded joint filers like plaintiffs from the advance refund scheme set forth in section 6428 in order to reduce the complexity and cost of administering the CARES Act. As explained above, Congress apparently intended to provide financial relief to individuals affected by the coronavirus pandemic through section 6428's advance refund scheme. It accordingly authorized the IRS to issue advance refunds to eligible individuals "as rapidly as possible." *See* 26 U.S.C. § 6428(f)(3)(A). Computing and issuing refunds to millions of individuals, however, is no small task. Congress did not require individuals to apply for advance refunds under section 6428. Instead, Congress authorized the IRS to rely on tax information from individuals' 2019 or 2018 tax returns, if available, to compute and issue advance refunds.

Plaintiffs suggest that the IRS could have issued SSN holders who filed joint tax returns with individuals without work-authorized SSNs advance refunds as if the SSN holder had filed her most recent tax return using the married filing separately filing

10

status.  How the IRS could be expected to compute such a credit without that separate tax return (as well as the separate tax return of the SSN holder's spouse), however, is unclear.  As we have explained, section 6428 instructs the IRS to compute the amount of an advance refund using the adjusted gross income from an eligible individual's most recent tax return.  But adjusted gross income is defined under the Internal Revenue Code as gross income less allowed above-the-line deductions.  *See* 26 U.S.C. § 62; *Knight*, 552 U.S. at 184.  Because joint filers aggregate their incomes and above-the-line deductions, the IRS, as a practical matter, would be unable to divine the adjusted gross income a joint filer would have had if she had filed using the married filing separately filing status.  It would not, for instance, know which deductions reported on the joint return would have been claimed (and by which spouse) if the taxpayer had filed separately.  It would also not know which qualifying children would have been claimed on a separate return for purposes of the $500 additional credit set forth in section 6428(a)(2).  Congress may have rationally determined that requiring the IRS to compute the theoretical eligibility of joint filers like plaintiffs would have been too much of an administrative burden on the IRS and accordingly excluded them from section 6428's advance refund scheme.[1]

That military families are excepted from the requirement that both individuals filing a joint tax return have an SSN valid for employment does not alter this conclusion. Joint filers are eligible to receive the full amount of any advance refund if at least one spouse was a member of the Armed Forces of the United States during the taxable year, and at least one spouse has an SSN valid for employment.  *See* 26 U.S.C. § 6428(g)(3). As such, the IRS is not required to determine whether joint filers described in section

---

[1] As the Government explained in other filings, plaintiffs and similarly situated individuals may elect to file their 2020 tax return separately in order to obtain a CARES Act credit (assuming they otherwise qualify).

11

6428(g)(3) would have qualified for an advance refund if they had filed separate tax returns; it can simply rely on their joint tax return to determine whether they are eligible to receive an advance refund.  And although plaintiffs have not challenged their exclusion from section 6428's advance refund scheme on the ground that military members filing joint returns are not so excluded, the United States "has a long standing policy of compensating veterans for their past contributions by providing them with numerous advantages.  This policy has 'always been deemed to be legitimate.'"  *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 550-51 (1983) (quoting *Personnel Administrator v. Feeney*, 442 U.S. 256, 279 n.25 (1979)).[2]

To summarize, the amount of the credit under section 6428 is based (among other things) on the adjusted gross income and qualifying children reported on an individual's 2019 or 2018 tax return.  Congress may have simply declined for purposes of administrative expediency to require that the IRS unwind an individual's joint tax return and determine whether she would have qualified for an advance refund if she had filed separately.  Although Congress's decision has the effect of excluding plaintiffs from an advance refund they would have otherwise qualified for, "[a] classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality."  *Aleman*, 217 F.3d at 1201 (internal quotations omitted).  For that reason, section 6428(g) should be sustained.

---

[2] Numerous other provisions in the Internal Revenue Code provide special benefits to military members.  For example, military members' combat pay is tax-free, *see* 26 U.S.C. § 112 *and* 26 C.F.R. § 1.112-1, and certain members of the military, such as those who served in a combat zone, can postpone most tax deadlines.  *See* 26 U.S.C. § 7508.  *See https://www.irs.gov/newsroom/members-of-the-armed-forces-get-special-tax-benefits* for more information on special tax benefits provided to members of the Armed Forces.

12

b. *Congress may have also excluded plaintiffs from the advance refund scheme in order to effectuate the reconciliation provisions in section 6428(e)(2)*

It is also possible that Congress believed excluding joint filers like plaintiffs from the advance refund scheme in subsection (f) was necessary to effectuate the reconciliation provisions set forth in 26 U.S.C. § 6428(e)(2). That provision, as described above, provides that "in the case of a refund or credit made or allowed under subsection (f) with respect to a joint return, half of such refund or credit shall be treated as having been made or allowed to each individual filing such return." If an advance refund in any amount were issued with respect to a joint return in which only one filer held an SSN valid for employment, half of the refund would be allocated to the ineligible spouse whom Congress permissibly excluded from section 6428's advance refund scheme. Plaintiffs, for instance, insist that the IRS should have issued them advance refunds of at least $1,200. If the refunds that they suggest were computed based on a joint tax return, however, section 6428(e)(2) would require half of the advance refunds to "be treated as having been made or allowed" to individuals without an SSN, thus contradicting subsection (g)(1), which provides that "[n]o credit shall be allowed" for such individuals. Congress may have rationally determined that the identification number requirement in subsection (g) was necessary to ensure that no CARES Act credit inured under subsection (e) (as an advance refund or otherwise) to an individual who was not authorized to work in the United States. Whether Congress could have selected a better method to effectuate this goal is not at issue.

c. *Congress may have believed section 6428(g) was necessary to effectuate section 6428(d)'s exclusion of nonresident aliens*

Congress may have rationally determined that subsection (g)'s SSN requirement was necessary to effectuate the exclusion of nonresident aliens from section 6428's statutory scheme under 26 U.S.C. § 6428(d)(1). Nonresident aliens, many of whom do

13

not have and are not entitled to receive SSNs valid for employment, are generally prohibited from filing joint federal income tax returns. *See* 26 U.S.C. § 6013(a)(1). However, nonresident aliens who are married to a citizen or resident of the United States may elect with her spouse to be treated as a resident alien for tax purposes and thereby file a joint federal income tax return. *See* 26 U.S.C. § 6013(g). Such an election is valid until it is revoked by either the alien or her spouse, or by another event enumerated in section 6013(g)(4), including the death of one of the taxpayers or their legal separation. *See* 26 U.S.C. § 6013(g)(4)(A). Congress may have rationally determined that requiring each joint filer to have an SSN valid for employment would prevent the advance refunds from being issued to nonresident aliens who elected be treated as resident aliens on the tax return used to generate the advance refund but later terminated the election on account of revocation, death, or legal separation. Again, whether Congress could have selected a better method to effectuate this goal is not at issue.

## C. Congress could reasonably have adopted language in section 6428(g) from other Code provisions which exclude SSN holders who file joint tax returns with non-SSN holders from receiving tax credits

As explained above, this Court need not determine the actual motivation of Congress or engage in fact-finding as to the rationality of Congress's conceivable motives. *See RUI*, 371 F.3d at 1155; *Fortuna Enterprises*, 673 F. Supp. 2d at 1013-14. And a legislature does not need to "actually articulate at any time the purpose or rationale supporting its classification." *Armour,* 566 U.S. at 685 (quotation omitted). Courts have nevertheless considered the likely genesis of statutory classifications in determining whether they should survive rational-basis review. *See Beach,* 508 U.S. at 317 (finding it plausible that because Congress "borrowed" language from prior administrative scheme that it also adopted earlier rationale to overcome equal protection challenge); *Allied Concrete*, 904 F.3d at 1066 (looking to legislative history when

14

1  determining plaintiffs had "not negated every conceivable justification" and concluding

2  statute passed the rational-basis test and did not violate the Equal Protection Clause).

3          There is no contemporaneous legislative history, such as a committee report or a

4  technical explanation, explaining Congress's rationale for section 6428(g).  *See* Joint

5  Comm. on Taxation, Description of the Tax Provisions of Public Law 116-136, The

6  Coronavirus Aid, Relief, and Economic Security ("CARES") Act, JCX-12R-20 (April

7  2020) at 1 n.2 ("On March 25, 2020, the Senate passed an amendment in the nature of a

8  substitute to H.R. 748.  On March 27, 2020, the House passed the bill and the President

9  signed the bill.  Neither the Senate amendment nor the House bill has contemporaneous

10 legislative history such as a committee report or a technical explanation.") and 9

11 (discussing identification number requirement but not its rationale).[3]

12         The language in section 6428(g) that requires both spouses to provide on their

13 joint tax return SSNs valid for employment in order to receive an advance refund is

14 almost identical to language from the 1996 amendments to the EIC found in the Personal

15 Responsibility and Work Opportunity Reconciliation Act of 1996, Pub L. No. 104-193, §

16 451(b)(1), 110 Stat. 2105 (Aug. 22, 1996) codified at 26 U.S.C. § 32(c)(1)(E), (d) &

17 (m)[4].  As explained in a Joint Committee on Taxation report, Congress imposed an SSN

18 requirement as a requirement for the EIC because "[it] did not believe that individuals

19

20

21

_____

22 [3]  The Congressional Record contains a lone relevant floor statement: 166 Cong. Rec. 61,
   H1840-41 (daily ed. March 27, 2020) (statement of Rep. TJ Cox) ("I am disappointed
23 about this bill's glaring shortcomings which must be remedied in a future bill.  This bill
   punishes mixed-status households and denies some American citizens benefits they
24 deserve.")

25 [4] Section 32(c)(1)(E) does not reference married filing jointly because the EIC can only
   be claimed by married individuals filing jointly (*see* section 32(d)).  26 U.S.C. § 32(m)
26 provides "[A] taxpayer identification number means a social security number."

27

28                                                    15

who are not authorized to work in the United States should be able to claim the credit."[5]
Joint Committee on Taxation proposals regarding the legislation consistently contained
the language prohibiting the EIC from being claimed on any joint return where both
filers did not provide a SSN that is substantially equivalent to the language in section
6428(g).[6]

The Economic Stimulus Act of 2008, Pub. L. No. 110-185, 122 Stat. 613 (Feb. 13,
2008), also used substantially similar language to the 1996 EIC amendments and current
section 6428(g), disallowing tax credits to individuals without SSNs valid for
employment and requiring married joint filers to both have such SSNs in order to obtain
the credit.  Congress apparently intended to exclude individuals not authorized to work

---

[5] *See* Joint Comm. on Finance, Budget Reconciliation Recommendations of the
Committee on Finance, 25-735, at 143 (July 1996) ("The [Finance] Committee does not
believe that individuals who are not authorized to work in the United States should be
able to claim the credit.").  Other legislative history from the 1996 Act is consistent.  *See
also* H.R. Rep. No. 104-725, at 392 (1996) (Conf. Rep.) ("earned income credit denied to
individuals not authorized to be employed in the United States"); H.R. Rep. No. 104-
651, at 1457 (1996) ("The [Budget] Committee does not believe that individuals who are
not authorized to work in the United States should be able to claim the credit.").

[6] *See* Joint Comm. on Taxation, Description of Tax Provisions Included in a Plan to
Achieve a Balanced Budget Submitted to the Congress by the President on January 6,
1996, JCX-1-96, at 97 (January 1996) ("Description of Proposal[:] Individuals would not
be eligible for the credit if they do not include their taxpayer identification number (and,
if married, their spouse's taxpayer identification number) on their return. . . [T]axpayer
identification number would be defined as a social security number[.]") Joint Comm. on
Taxation, Description of the Tax and Health Insurance Reform Provisions in the
President's Seven-Year Balanced Budget Proposal Released on December 7, 1995, JCX-
58-95, at 14 (December 1995) ("Description of Proposal[:] . . . Individuals would not be
eligible for the credit if they do not include their taxpayer identification number (and, if
married, their spouse's taxpayer identification number) on their return. . . . [T]axpayer
identification number would be defined as a social security number[.]");  Joint Comm.
on Taxation, Present Law and Issues Relating to the Earned Income Credit, JCX-24-95,
at 8 (June 1995) ("Description of Proposal[][:] . . . Taxpayers would not be eligible for
the EIC if they do not include their taxpayer identification number (and, if married, their
spouse's taxpayer identification number) on their tax return. . . . [T]axpayer identification
number would be defined as a social security number[.]").

16

1   in the United States from obtaining the credit.[7]  The language in current section

2   6428(g)(3) providing for credits to military service members, even in cases where both

3   spouses do not have SSNs valid for employment and the couple files jointly, mirrors the

4   language in the 2008 economic stimulus provisions.[8]

5        Here, the exclusionary language of section 6428(g) that plaintiffs challenge is

6   almost identical to language from another section of the Internal Revenue Code

7   providing EICs that has been in effect for decades.  A decision by Congress to "borrow"

8   language in effect and administered by the Internal Revenue Service since 1996 would

9   be a rational administrative choice to implement the advance refund and tax credit

10  scheme in the CARES Act expediently.  *See Beach*, 508 U.S. at 317 (looking at language

11  "borrowed" by Congress in positing hypothetical rationality and upholding statute);

12  *Armour*, 566 U.S. at 682 (administrative implementation concerns can justify

13  distinctions under rational-basis review).  It cannot be said Congress was irrational to use

14  longstanding legislative language to implement the CARES Act in ways concomitant

15  with other tax credit provisions in the Code.  Whether or not Congress could have

16  tailored the restriction in current section 6428(g) to be more precise or fair than the

17  language it borrowed from other Code provisions is irrelevant for purposes of rational-

18  basis review.  *See Aleman*, 217 F.3d at 1201 (quoting *Heller*, 509 U.S. at 321).  The

19

20  [7] *See* Economic Stimulus Act of 2008, Pub. L. No. 110-185, § 6428(h), 122 Stat. 613,
21  615 (2008); Joint Comm. on Taxation, General Explanation of Tax Legislation Enacted
     in the 110th Congress, JCS-1-09 77 (March 2009) (explaining Economic Stimulus Act
22  of 2008's identification number requirement); Joint Comm. on Taxation, Technical
     Explanation of the Revenue Provisions of H.R. 5140, the "Economic Stimulus Act of
23  2008" as Passed by the House of Representatives and the Senate on February 7, 2008,
     JCX-16-08 (February 2008) (technical explanation of the Economic Stimulus Act of
24  2008, echoing language from JCS-1-09); Joint Comm. on Taxation, Description of the
     Chairman's Modification to the Provisions of the "Economic Stimulus Act of 2008",
     JCX-11-08 2 (January 2008) (explaining modifications).

25  [8]  *See* Heroes Earnings Assistance and Relief Tax Act of 2008, Pub L. No. 110-245, §
26  101, 122 Stat. 1624, 1625 (June 17, 2008) (amending 2008's section 6428(g) to make
     taxpayers filing joint returns eligible for rebates when at least one spouse has an SSN
27  and at least one spouse is in the military).

28                                        17

1    same goes for the wisdom or the fairness of the provision itself.  *See Nordlinger,* 505

2    U.S. at 17-18*; Aleman*, 217 F.3d at 1200.  Accordingly, the constitutionality of section

3    6428(g) should be upheld.

4         **D.     Plaintiffs' action should be dismissed with prejudice and without**

5              **discovery**

6         Courts dismiss equal protection claims for failure to state a claim upon which

7    relief can be granted when plaintiffs fail to overcome the presumption of

8    constitutionality and rationality afforded to a statute subject to rational-basis review.  *See*

9    *Aleman*, 217 F.3d at 1201.  The Government has posited, despite having no obligation to

10   do so, plausible reasons, including administrative expediency, why Congress might have

11   excluded individuals like plaintiffs from the advance refund scheme in section 6428.  As

12   such, plaintiffs cannot meet their burden to show that there was no rational basis for the

13   classification.  Moreover, because under rational-basis review a reason need only be

14   plausible and not factual, discovery regarding rational basis is not warranted.  *See Beach*,

15   508 U.S. at 314-15 ("[A] legislative choice is not subject to courtroom fact-finding and

16   may be based on rational speculation unsupported by evidence or empirical data.").

17        In addition, because the Government has demonstrated multiple plausible rational

18   bases for the challenged classification, the Government's motion to dismiss for failure to

19   state a claim should be granted.[9]  *See U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179

20   (1980) (holding that where a plausible explanation has been given, it is irrelevant

21   whether that reasoning was in fact the basis of Congress's enactment of the legislation,

22   and the "inquiry is at an end.").  Finally, because plaintiffs have already amended their

23   complaint in response to the Government's opposition to plaintiffs' application for

24

25   [9]  Counsel for the Government understood from the July 13, 2020, hearing on this matter
26   that this brief should supplement its motion to dismiss.  To the extent counsel
     misunderstood the procedural posture of this case, this memorandum is submitted solely
27   as briefing per the Court's instructions (ECF 50).

28                                              18

temporary restraining order, the dismissal of their case should be with prejudice.  *See*
*Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's
discretion to deny leave to amend is particularly broad where the plaintiff has previously
amended.") (quotation omitted).  Additionally, it is unclear how plaintiffs could amend
their complaint to state a claim under rational-basis review.

## III.    CONCLUSION

For the reasons stated in the Government's motion, reply, and this brief, plaintiffs'
first amended complaint fails to state a claim upon which relief can be granted.
Plaintiffs' action should be dismissed with prejudice.


Dated: July 20, 2020                     Respectfully submitted,

                                         NICOLA T. HANNA
                                         United States Attorney
                                         THOMAS D. COKER
                                         Assistant United States Attorney
                                         Chief, Tax Division

                                         ____/s/ John D. Ellis_____
                                         MELISSA BRIGGS
                                         JOHN D. ELLIS
                                         Assistant United States Attorneys

                                         Attorneys for the United States of America

19