BLAISE & NITSCHKE, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
123 N. Wacker Drive, Suite 250
Chicago, IL 60606
Telephone: 312-448-6602
Email: hblaise@blaisenitschkelaw.com

Attorneys for Plaintiffs,
JANE DOE and JOHN DOE, individually and
on behalf of others similarly situated

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| JANE DOE and JOHN DOE, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his individual and official capacity as President of the United States; MITCH MCCONNELL, in his individual and official capacity as a Senator and Sponsor of S. 3548 CARES Act; and STEVEN MNUCHIN, in his individual and official capacity as the Acting Secretary of the U.S. Department of Treasury; CHARLES RETTIG, in his individual and official capacity as U.S. Commissioner of Internal Revenue; U.S. DEPARTMENT OF THE TREASURY; the U.S. INTERNAL REVENUE SERVICE; and the UNITED STATES OF AMERICA,<br><br>Defendants. | CASE NO: 8:20-cv-00858-SVW-JEM<br>*Assigned to the Hon. Stephen V. Wilson*<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' INITIAL BRIEF PURSUANT TO JULY 13, 2020 ORDER (DKT. 50)**<br><br>Hearing Date: August 3, 2020<br>Time:             1:30 p.m.<br>Location:       Conducted telephonically<br><br>Action Filed: May 6, 2020 |

Plaintiffs JANE DOE and JOHN DOE hereby submit their response to The United States of America's brief in accordance with this Honorable Court's order dated July 13, 2020 (Dkt. 50).

1  DATED: July 27, 2020           Respectfully submitted,

2                                   By:    */s/ Heather L. Blaise*

3                                           HEATHER L. BLAISE, ESQ. (SBN 261619)

4                                           123 N. Wacker Drive, Suite 250

5                                           Chicago, IL 60606

6                                           Telephone: 312-448-6602

7                                           Email: hblaise@blaisenitschkelaw.com

                                         *Attorney for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................iii

TABLE OF AUTHORITIES ........................................................................................iv

PLAINTIFFS' RESPONSE TO DEFENDANTS' INITIAL BRIEF PURSUANT TO JULY 13, 2020 ORDER (DKT. 50) ....................................................................1

I.   The CARES Act Impermissibly Inhibits Plaintiffs' Fundamental Rights under the First Amendment and the Fifth Amendment. ...........................................1

   A.   The CARES Act's Infringement on Plaintiffs' Fundamental Right to Free Speech Under the First Amendment Warrants Strict Scrutiny Review.........2

   B.   The CARES Act's Infringement on Plaintiffs' Fundamental Right to Due Process under the Fifth Amendment Warrants Strict Scrutiny Review. .......7

   C.   The CARES Act's Infringement on Plaintiffs' Equal Protection of the Laws under the Fifth Amendment Warrants Strict Scrutiny Review...................10

II.  Even if the CARES Act's Infringement on Plaintiffs' Fundamental Right to Equal Protection under the Fifth Amendment Warranted Rational Basis Review, there is no Rational Basis for the Exclusion Provision. ..................13

   A.   Administrative Concerns Do Not Constitute a Valid Rational Basis for Excluding Plaintiffs From Receipt of the Advance Payment or the CARES Act Credit. ............................................................................................14

   B.   The Legal Fiction Created by I.R.C. § 6428(e) is not a "Reconciliation Procedure."................................................................................................16

   C.   The Exclusionary Provision is a Merely Vehicle to Punish an Unpopular Group.........................................................................................................17

III. Plaintiffs are Entitled to an Injunction Now and Plaintiffs are Entitled to Discovery. ......................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Aleman v. Glickman*, 217 F.3d 1191 (9th Cir. 2000)...............................................21, 22

*Alliance for Open Society International, Inc. v. United States Agency for International Development*, 651 F.3d 218 (2d Cir. 2011)...............................5, 6

*Allied Concrete and Supply Company v. Baker*, 904 F.3d 1053 (9th Cir. 2018)........22

*Ashcroft v. American Civil Liberties Union*, 542 U.S. 656 (2004) ..............................7

*Bernal v. Fainter*, 467 U.S. 216 (1984) ......................................................................11

*Borden's Farm Prods. Co. v. Baldwin*, 293 U.S. 194 (1934) ....................................20

*C.f. INS v. Chada*, 462 U.S. 919 (1983) .....................................................................20

*City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432 (1985)...................10

*Den ex dem. Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272 (1855)......................8

*Department of Agriculture v. Moreno*, 413 U.S. 528 (1973) .........................17, 18, 20

*Eisenstadt v. Baird*, 405 U.S. 438 (1972).............................................................18, 19

*FCC v. Beach Communications*, 508 U.S. 307 (1993)................................................20

*Franklet v. United States*, 578 F.Supp. 1552 (N.D. Cal. 1984).....................................3

*Frontiero v. Richardson*, 411 U.S. 677, 686 (1973)..................................................12

*Graham v. Richardson*, 403 U.S. 365 (1971).............................................................11

*Harper v. Va. State Bd. Of Elections*, 383 U.S. 663 (1966) ................................10, 12

*Heller v. Doe*, 509 U.S. 312 (1993) ............................................................................21

*INS v. Chadha*, 462 U.S. 919 (1983) ..........................................................................21

*Khan v. United States*, 753 F.2d 1208 (3d Cir. 1985) ..................................................3

*Koala v. Khosla*, 931 F.3d 887 (9th Cir. 2019) ............................................................5

*Krishna Lunch of S. Cal. v. Gordon* (9th Cir. 2020) ..................................................21

*Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976) ...........................................9

*Mathews v. Diaz*, 426 U.S. 67 (1976).....................................................................11, 12

*Maynard v. Hill*, 125 U.S. 190 (1888).........................................................................9

*Metropolitan Life Insurance Company v. Ward*, 470 U.S. 869 (1985)......................20

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ...............................20, 21

*Nyquist v. Mauclet*, 432 U.S. 1 (1977) ......................................................................11

*Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) .......................................................7, 8, 9

*Oyama v. California*, 332 U.S. 633 (1948) .................................................................12

*Perry v. Sinderman*, 408 U.S. 593 (1972) ...................................................................5

*Romer v. Evans*, 517 U.S. 620 (1996) ........................................................................20

*Sorenson v. Sec'y of Treasury of U.S.*, 752 F.2d 1433 (9th Cir. 1985).....................14

*Speiser v. Randall*, 357 U.S. 513 (1958) .................................................................4, 5

*Sugarman v. Dougall*, 413 U.S. 634 (1973) ..............................................................11

*United States v. Windsor*, 570 U.S. 744 (2013)........................................................8, 9

*Village of Willowbrook v. Olech*, 258 U.S. 562 (2000)..............................................20

*W. Va. State Bd. Of Educ. v. Barnette*, 319 U.S. 624 (1943) ......................................5

*Wooley v. Maynard*, 430 U.S. 705 (1977) ........................................................................5

*Zablocki v. Redhail,* 434 U.S. 374 (1978) ......................................................................9

**Statutes**

I.R.C. § 1 ...........................................................................................................................3

I.R.C. § 6012 ..............................................................................................................3, 4, 6

I.R.C. § 6013 .....................................................................................................................3

I.R.C. § 6020 ...................................................................................................................15

I.R.C. § 6702 .....................................................................................................................3

I.R.C. § 6751 ...................................................................................................................15

I.R.C. § 6752 ...................................................................................................................15

I.R.C. § 7203 .....................................................................................................................3

I.R.C. § 7703 .....................................................................................................................3

**Other Authorities**

Coronavirus Aid, Relief, and Economic Security Act,
    Pub. L. No. 116-136, H.R. 748, 116th Cong. (2020) ......................................*passim*

**Constitutional Provisions**

U.S. Const. amend. I ...................................................................................................*passim*

U.S. Const. amend. V ..................................................................................................*passim*

## PLAINTIFFS' RESPONSE TO DEFENDANTS' INITIAL BRIEF PURSUANT TO JULY 13, 2020 ORDER (DKT. 50)

### I. The CARES Act Impermissibly Inhibits Plaintiffs' Fundamental Rights under the First Amendment and the Fifth Amendment.

In response to the greatest financial and health crisis this country has ever seen, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136 (March 27, 2020) ("CARES Act"), which, in part, provided emergency financial relief to Americans. The CARES Act added Section 6428 to the Internal Revenue Code, providing for a tax credit for the year 2020 to be issued immediately in the form of an Advance Payment[1] to taxpayers if certain income and other eligibility thresholds were met. But not everyone who met the income threshold could or would receive an Advance Payment, no matter how dire their need. Congress included a provision — the Exclusion Provision codified at 26 U.S.C. 6428(g) ("Exclusion Provision") — which prohibits United States citizens who are married and file tax returns jointly with spouses who have an Individual Taxpayer Identification Number ("ITIN") instead of a Social Security Number ("SSN") from receiving the Advance Payment. The Exclusion Provision deprives over 1.2 million United States citizens of a benefit over one hundred million other similarly situated United States citizens have already received. The Exclusion Provision simply cannot be squared with the United States Constitution.

The Exclusion Provision unconstitutionally restrains three fundamental rights. First, the Exclusion Provision inhibits speech, a fundamental right protected by the First Amendment. The Exclusion Provision also improperly burdens the benefits of marriage, a fundamental right, also protected by due process embodied in the Fifth Amendment. Finally, the Exclusion Provision improperly denies Plaintiffs equal

---

[1] Defined terms, including the Exclusion Provision, Advance Payment, ITIN, etc., are defined in Plaintiffs' Opposition to Defendants' Motion to Dismiss. *See* Dkt. 32.

protection under the law promised by the Fifth Amendment. Any one of these infringements of Plaintiffs' fundamental rights subjects the government to strict scrutiny and demonstrates that the Exclusion Provision cannot stand.

Moreover, even if rational basis was the appropriate standard for judicial review of Plaintiffs' Due Process and Equal Protection Claims, the Defendants (the "Government") have failed to articulate any rational basis or legitimate government interest for the Exclusion Provision. Defendants simply do not have a legitimate interest in depriving Plaintiffs of the Advance Payment, much less one that outweighs Plaintiffs' fundamental rights to be treated equally with their fellow United States citizens, to have their marriages respected, and to speak freely about their marriages. Accordingly, Plaintiffs are entitled to an injunction preventing enforcement of the Exclusion Provision, and an order directing Defendants to treat them equally with other United States citizens by immediately issuing the Advanced Payments for all those who otherwise qualify.

## A. The CARES Act's Infringement on Plaintiffs' Fundamental Right to Free Speech Under the First Amendment Warrants Strict Scrutiny Review.

In his prolific November 13, 1789, letter to Jean Baptiste Le Roy, Benjamin Franklin observed: "Our new Constitution is now established, and has an appearance that promises permanency; but in this world nothing can be said to be certain, except death and taxes." That statement continues to profoundly resonate today. Few sections of the United States Code intersect with the daily lives of Americans as does Title 26, the Internal Revenue Code. Each year (except this year), on April 15, hundreds of millions of Americans file their federal income tax returns, completing one of the most maligned, but necessary, duties of United States personhood.

Plaintiffs, like all United States citizens whose income exceeds a certain amount, are obligated to file federal income tax returns on an annual basis. I.R.C. § 6012. Were Plaintiffs to willfully fail to file income tax returns, the government

could criminally prosecute the failure. I.R.C. § 7203. Accordingly, Plaintiffs are required to engage in some degree of protected speech by informing the Internal Revenue Service of information including their name, address, social security number, and gross income. Plaintiffs, as married individuals, are entitled to file jointly with their spouses, but also may file separately from their spouses. I.R.C. §§ 1(a); 6012(a)(1)(A)(iv) ("who is entitled to make a joint return"); 6013 ("Joint returns of income tax by husband and wife"); 7703 ("Determination of marital status"). Marital status on a federal income tax return is determined by I.R.C. § 7703. I.R.C. §§ 1(a)(1), (d). In general, individuals who are married on the last day of the calendar year have two valid filing status options from which to choose: "married filing jointly" or "married filing separately." I.R.C. § 7703.

The First Amendment protects speech on tax forms. Of course, the right to speech on a tax return is not absolute, and the government has a strong, legitimate interest in encouraging lawful, truthful tax returns and may deter false or frivolous tax returns through imposition of stiff civil penalties. *See*, *e.g.*, I.R.C. § 6702. *Khan v. United States*, 753 F.2d 1208 (3d Cir. 1985) and *Franklet v. United States*, 578 F.Supp. 1552 (N.D. Cal. 1984) both acknowledged that tax returns constitute speech that is afforded First Amendment protection. *Kahn*, 753 F.2d at 1217; *Franklet*, 578 F.Supp. at 1556. Those cases also illustrate the unfortunate way the First Amendment has historically been raised in most tax cases: an attempt to defend protestor-type arguments that undermine administration of this country's voluntary, self-reporting tax system. Not surprisingly, both the *Kahn* and *Franklet* courts held that the government's strong, legitimate interest in effective functioning of a massive revenue system outweighed private citizens' right to express protest through filing federal income tax returns. The premise that speech contained on an income tax return is protected by the First Amendment is applicable here, but unlike in *Kahn* and *Franklet*, permitting the speech at issue will not undermine the administration of our

revenue laws or system. And more importantly, unlike in *Kahn* and *Franklet*, Plaintiffs only seek to file valid tax returns that accurately report their marital status, which is protected under the First Amendment as speech and association.

By awarding an Advance Payment to United States Citizens who otherwise meet income eligibility requirements and who are married to other United States citizens, or who are unmarried, or who are married to ITIN holders but do not elect to file income tax returns jointly with their spouses, Defendants have impermissibly restricted Plaintiffs' fundamental First Amendment right to engage in free speech. Denying the Advance Payment to Plaintiffs, who file jointly with their spouses, places an unconstitutional condition on their First Amendment protected right to speak freely about their marriages in the form of jointly filed federal income tax returns. So long as Plaintiffs continue to exercise their First Amendment right to express their marriages through jointly filed income tax returns – an "entitlement" afforded by I.R.C. § 6012(a)(1)(A)(iv) – they will never be eligible for the Advance Payment.

Over sixty years ago, the Supreme Court unequivocally rejected as unconstitutional the type of conditions-based denial of benefits the Government tries to defend here in *Speiser v. Randall*, 357 U.S. 513 (1958). In *Speiser*, the State of California conditioned receipt of a tax exemption on signing a declaration stating that the taxpayer did not support overthrowing the government. *Id.* at 516. The Supreme Court emphatically rejected the offending provision of the statute conditioning receipt of a benefit on engaging in speech as violative of the First Amendment. "It cannot be gainsaid that a discriminatory denial of a tax exemption for engaging in speech is a limitation of free speech." *Id.* at 518. This is so because "the denial of a tax exemption for engaging in certain speech necessarily will have the effect of coercing the claimants to refrain from the proscribed speech." *Id.* at 519. Allowing such a

statute to stand would "allow the government to produce a result which [it] could not command directly." *Id*. at 526.

Congress may not condition denial of the CARES Act benefit on prohibiting Plaintiffs from engaging in speech in the form of filing tax returns as married filing jointly with their ITIN-holder spouses or requiring Plaintiffs to engage in speech in the form of filing tax returns as married filing separately apart from their ITIN-holder spouses any more than the State of California could require World War II veterans to affirm that they did not advocate overthrowing the government by use of force in order to receive a tax exemption. *Id.* The Supreme Court has roundly rejected the exact kind of conditions-based benefits that seek to influence speech at issue here. *See, e.g.*, *Perry v. Sinderman*, 408 U.S. 593; 597 (1972) ("[I]f the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited."); *Wooley v. Maynard*, 430 U.S. 705, 719 (1977) ("where 'the State's interest is to disseminate an ideology, no matter how acceptable to some, such interest cannot outweigh an individual's First Amendment right to avoid becoming the courier for such message.'"); *W. Va. State Bd. Of Educ. v. Barnette*, 319 U.S. 624, 633-34 (1943) ( "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all[.]"). While it is true that a legislative body's decision not to subsidize the exercise of a fundamental right does not infringe on that right, *withholding* benefits from certain groups while affording those benefits to others who are similarly situated with a "censorious" purpose violates the First Amendment. *Koala v. Khosla*, 931 F.3d 887, 898 (9th Cir. 2019). In *Alliance for Open Society International, Inc. v. United States Agency for International Development*, the Court of Appeals for the Second Circuit affirmed a District Court order granting a preliminary injunction enjoining enforcement of a statute requiring specific speech in

1   exchange for funding. 651 F.3d 218 (2d Cir. 2011). Relying heavily on Supreme

2   Court cases *Wooley, Speiser, and Barnette*, the Second Circuit noted that in that case,

3   as with Plaintiffs here, silence was not an option. Here, Plaintiffs must file tax returns

4   and select a valid filing status. I.R.C. § 6012. Where, as in *Alliance for Open Society*

5   and in the case at bar, "the government seeks to affirmatively require government-

6   preferred speech, its efforts raise serious First Amendment concerns." 651 F.3d at

7   234. At bottom, "[c]ompelling speech as a condition of receiving a government

8   benefit cannot be squared with the First Amendment." *Id.*

9       Requiring Plaintiffs to file tax returns as "married filing separately" to a

10  receive a benefit they would not be entitled to if they file "married filing jointly" as

11  they are entitled to do under I.R.C. § 6012(a)(1)(A)(iv) cannot be interpreted as

12  anything but an impermissible condition on receiving a government benefit. The

13  Exclusion Provision seeks to compel speech that Congress could never directly

14  compel – requiring United States citizens who are married to ITIN holders to file

15  their income tax returns as "married filing separately" by depriving them of a benefit

16  absent conforming their speech to the desired government outcome. In doing so, the

17  government forces an SSN holder married to an ITIN holder to make a *Sophie's*

18  *Choice*: allow their speech to be regulated by the government and file separately in an

19  attempt to gain the Advance Payment during this unprecedented time of need, thereby

20  jeopardizing the ITIN holder's application for legal immigrant status, or file jointly

21  and forgo the Advance Payment. *See* Dkt. 11 at 20-21, and Exhibits C and D; *see also*

22  Dkt. 26 at 19-20, and Exhibits E-G. The government is prohibited from conditioning

23  Plaintiffs' right to receive the benefit in the form of Advance Payment on their

24  agreement to alter their speech to conform to the government's preferred speech.

25      The Exclusion Provision, therefore, restricts speech that Plaintiffs have a right

26  to engage in. The burden is therefore on the Government on the ultimate question of

27  constitutionality, as well as to demonstrate that curtailing Plaintiffs' speech is the

28

least restrictive means available to accomplish a legitimate legislative goal. *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 666 (2004). The Government has not and cannot meet this burden, and the injunction in favor of Plaintiffs should be granted.

As Benjamin Franklin presciently articulated over two hundred years ago, our Constitution, though seemingly permanent, was not as certain as death and taxes. This Court must now elect its course: to either uphold, or curtail, the fundamental protections of the First Amendment to the United States Constitution.

**B.    The CARES Act's Infringement on Plaintiffs' Fundamental Right to Due Process under the Fifth Amendment Warrants Strict Scrutiny Review.**

"The Constitution promises liberty to all within its reach, a liberty that includes certain specific rights that allow persons, within a lawful realm, to define and express their identity." *Obergefell v. Hodges*, 135 S.Ct. 2584, 2593 (2015). Plaintiffs seek to find that liberty by defining and expressing their identity through their personal choice of marriage and having their marriages treated as equal on the same terms and conditions as marriages between two U.S. citizens. *Id.* The Exclusion Provision denies Plaintiffs' liberties without the due process protections afforded them by the Fifth Amendment. In *Obergefell v. Hodges*, the Supreme Court recognized that "the right to personal choice regarding marriage is inherent in the concept of individual autonomy." *Id.* at 2598. Through the "enduring bond" of marriage, couples can "find other freedoms, such as expression, intimacy, and spirituality." *Id.* at 2599. Marriage "safeguards children and families," and "the right to marry, establish a home and bring up children is a central part of the liberty protected by the Due Process Clause." *Id.* at 2600 (citations omitted). Due process offers marriages "*recognition*, stability, and predictability." *Id.* (emphasis added). It is with these basic principles in mind that we turn to the Exclusion Provision, which deprives Plaintiffs of the recognition,

1  stability, and predictability that the Due Process protections of the Fifth Amendment

2  require.

3      Without question, the Defendants and this Court have correctly noted that the

4  Exclusion Provision does not deprive Plaintiffs of the right to marry the person of

5  their choice. It does not, unlike the Michigan Marriage Amendment at issue in

6  *Obergefell* or the Defense of Marriage Act at issue in *United States v. Windsor*, 570

7  U.S. 744 (2013), invalidate or refuse to recognize a marriage as valid. But death by a

8  thousand cuts is nevertheless still death, and a society that allows liberties that should

9  be protected to be chipped away one at a time is destined for despotism. *See, e.g.*,

10  *Den ex dem. Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 276 (1855) (the Due

11  Process clause of the Fifth Amendment "is a restraint on the legislative as well as on

12  the executive and judicial powers of the government, and cannot be so construed as to

13  leave congress free to make any process 'due process of law' by its mere will."). For

14  the Exclusion Provision may well be just as pernicious to Plaintiffs' marriages as

15  DOMA was to Edith Windsor and as the Michigan Marriage Amendment was to

16  James Obergefell. By denying Plaintiffs' marriages the *recognition* that Due Process

17  requires, the Exclusion provision deprives the marriage of the *stability* that the

18  CARES Act was designed to provide. Moreover, it may well result in Plaintiffs being

19  unable to reside in the same country as their chosen spouse. *See* Dkt. 11 at 20-21, and

20  Exhibits C and D; *see also* Dkt. 26 at 19-20, and Exhibits E-G.

21      In *Obergefell* and *Windsor*, the Supreme Court was concerned with not only

22  *recognition* of the marriages which those individuals sought to enter, but also with the

23  deprivation of the "constellation of benefits" accompanying marriage. *Obergefell*,

24  135 S. Ct. at 2601. The Exclusion Provision illustrates just how easily government

25  can denigrate a marriage and deprive individuals of the "constellation of benefits"

26  that accompany "favored" unions over those that are politically unpopular. Certainly

27  this Court would not countenance a provision that denied the Advance Payment to

28

- 8 -

United States citizens in same sex marriages, in marriages to individuals from specific countries, or in marriages to individuals of a difference race. Nor should this Court countenance the Exclusion Provision, which deprives Plaintiffs of the recognition and "constellation of benefits" conferred on United States citizens who have chosen to marry someone who has a Social Security Number instead of an ITIN.

The Supreme Court's jurisprudence on the importance and sanctity of the institution of marriage has developed over one hundred years. Since 1888, the Court has recognized that marriage is "the foundation of the family and of society, without which there would be neither civilization nor progress." *Maynard v. Hill*, 125 U.S. 190, 213 (1888). It is with this basic principle in mind that the *Obergefell* Court explained, "just as a couple vows to support each other, so does society pledge to support the couple, offering symbolic recognition and material benefits to protect and nourish the union..." *Obergefell*, 135 S. Ct. at 2601. That pledge falls short here. The purpose and effect of the Exclusion Provision is the same as the purpose and effect of the Defense of Marriage Act and the Michigan Marriage Amendment: "to disparage and to injure" the Plaintiffs. *Windsor*, 570 U.S. at 2696. Accordingly, it violates the Due Process Clause of the Fifth Amendment and must be struck down.

Legislative classifications that burden fundamental rights are subject to strict scrutiny review. Strict scrutiny applies when a legislative classification "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312(1976). Such classifications are presumed unconstitutional and will survive strict scrutiny only when the government can show the law is narrowly tailored to a compelling governmental interest. *See Zablocki v. Redhail,* 434 U.S. 374, 388 (1978). Clearly, the Exclusion Provision cannot survive such scrutiny as no bases put forth by the Defendants demonstrate any compelling government interest, and certainly are not narrowly tailored. Neither administrative ease, nor reconciliation of

the payment are compelling government interests, and as detailed in Section III below, are not narrowly tailored to serve any interests. Accordingly, the Exclusion Provision must be found unconstitutional.

### C. The CARES Act's Infringement on Plaintiffs' Equal Protection of the Laws under the Fifth Amendment Warrants Strict Scrutiny Review.

"[W]here fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully contained." *Harper v. Va. State Bd. Of Elections*, 383 U.S. 663, 670 (1966). When a right is "too precious, too fundamental," it may not be conditioned, and must be struck down. *Id.* The Exclusion Provision in the CARES Act violates Equal Protection in three ways. Each is sufficient to strike the Exclusion Provision down, and taken together as a whole they compel this Court to grant Plaintiffs' motion for an injunction, at once.

Statutes that classify by race, alienage, or national origin are "so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). Given that "such discrimination is unlikely to be soon rectified by legislative means, these laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." *Id.* As Plaintiffs demonstrate in Section II, *infra*, the Government does not even have a rational basis for the Exclusion Provision, let alone a *compelling* state interest. Defendants put forth three half-hearted attempts to surmise what Congress "might have considered," but the absence of legislative history on the Exclusion Provision coupled with the absence of any attempt to argue that the state interest is compelling renders this element satisfied in favor of Plaintiffs. The only remaining question to consider is whether the Exclusion Provision classifies on a suspect class. It does.

1        1.    The Exclusion Provision Discriminates Against Plaintiffs on the

2                  Basis of Alienage, and is Subject to Strict Scrutiny.

3        There is abundant jurisprudence invalidating statutes which sought to deny

4    aliens equal protection under the law. *See*, *e.g.*, *Bernal v. Fainter*, 467 U.S. 216

5    (1984) (invalidating statute requiring that a notary public be a United States citizen

6    on equal protection grounds and applying strict scrutiny); *Sugarman v. Dougall*, 413

7    U.S. 634 (1973) (invalidating statute barring aliens from certain civil service

8    positions); *Nyquist v. Mauclet*, 432 U.S. 1 (1977) (holding exclusion of aliens from

9    loan program violated equal protection and applying strict scrutiny). In its Order

10   dated July 8, 2020 (Dkt. 44), the Court determined that the classification based on

11   alienage is subject to rational basis because Plaintiffs, unlike their spouses, are

12   citizens. However, there is ample precedent for applying strict scrutiny to the

13   Exclusion Provision based on alienage. In *Nyquist v. Mauclet*, the Supreme Court

14   encountered a similar argument in that the statute at issue "was not an absolute bar"

15   to the right at issue, but the statute was *directed* at aliens and aliens were harmed by

16   it. 432 U.S. at 9. Simply because the Government is harming both aliens and their

17   families (including United States citizens) through the Exclusion Provision does not

18   mean it can escape strict scrutiny. Similarly, in *Graham v. Richardson*, the Supreme

19   Court invalidated a state statute that denied benefits to a certain class of aliens. 403

20   U.S. 365 (1971). The Court held, "justification of limiting expenses is particularly

21   inappropriate and unreasonable when the discriminated class consists of aliens." In

22   this case, the discriminated class consists of alien spouses. Congress cannot cure the

23   invidious exclusion of aliens by broadening it to include their families in an effort to

24   escape strict scrutiny judicial review, and this Court should reject the attempt to do

25   so. *Mathews v. Diaz*, 426 U.S. 67 (1976), which distinguished *Graham*, is inapposite.

26   In that case, the Supreme Court expressly held there was "no impairment of the

27   freedom of association of either citizens or aliens." *Id.* at 87. Here, the Exclusion

28

Provision directly impairs the freedom of citizens to associate with aliens by withholding a benefit from citizens if they choose to associate with aliens by marrying them and expressing that association through joint tax returns.

        2.     The Exclusion Provision Discriminates Against Plaintiffs on the Basis of National Origin, and is Subject to Strict Scrutiny.

Place of birth, which is an "immutable characteristic determined solely by the accident of birth" forms the basis finding a suspect class. *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973). In *Oyama v. California*, 332 U.S. 633 (1948), the Supreme Court admonished that when reviewing statutes that result in deprivation of rights based on national origin, "it is incumbent upon us to inquire not merely whether [constitutional rights] have been denied in express terms, but also whether they have been denied in substance and in effect." In that case, Mr. Oyama had to jump through multiple hoops to be able to own land in California, hoops that no other Californian would have had to jump through to accomplish the same result. As with alienage, the Government has chosen to cast its net of discrimination more broadly and deprives both those who are ITIN holders and their United States citizen spouses of the Advance Payment. But the discriminatory purpose is the same-national origin, and the harm to Plaintiffs is equally as unconstitutional as it was in *Oyama*.

        3.     The Exclusion Provision Unconstitutionally "Taxes" Plaintiffs' Marriage, and is Subject to Strict Scrutiny.

As Plaintiffs more fully explained in Section I(B), *supra*, the Exclusion Provision burdens the "constellation of benefits" afforded to marriages. In *Harper v. Virginia State Board of Elections*, 383 U.S. 663 (1966), the Supreme Court considered whether a poll tax imposed in the State of Virginia withstood constitutional scrutiny, and roundly rejected the premise. While the Court acknowledged that States may impose reasonable requirements on voting, imposing requirements "which invidiously discriminate" could not be squared with the equal protection clause. *Id.* at 666.

By denying Plaintiffs the CARES Act tax credit, which is afforded to all other similarly situated United States citizens, the Government has placed a penalty on their marriage if they file tax returns jointly that is akin to a poll tax. The Exclusion Provision has but one purpose – to disparage Plaintiffs' marriages by refusing them a benefit that is afforded to all other similarly situated individuals and married couples when the marriage does not include an ITIN holder. Unless Plaintiffs file their tax returns separately, risking not only future immigration proceeding outcomes but also receipt of the CARES Act credit they seek to obtain, their marriages will be penalized in the amount of the CARES Act credit that they would have otherwise obtained if not married to and filing jointly with an ITIN holder. *See* Affidavit of Guinevere M. Moore attached hereto and incorporated herein as Exhibit A, ¶¶ 7-8. Defendants will protest and argue they are not refusing to acknowledge Plaintiffs' marriages, and this is true. No federal or state government is refusing to acknowledge that Plaintiffs' marriages are valid. But surely the Government cannot side-step the constitutional protections afforded in the Equal Protection Clause by acknowledging Plaintiffs' marriages as valid and then charging them what amounts to an "immigrant marriage penalty" to denigrate that marriage. Instead, what is warranted is invalidation of the Exclusion Provision and an Injunction in Plaintiffs' favor.

## II. Even if the CARES Act's Infringement on Plaintiffs' Fundamental Right to Equal Protection under the Fifth Amendment Warranted Rational Basis Review, there is no Rational Basis for the Exclusion Provision.

Defendants attempt to distract this Court from the discriminatory purpose of the Exclusion Provision by taking pages to describe the steps to determine how taxable income is calculated and how the CARES Act works. Plaintiffs do not dispute that computing an individual's income tax liability is a multi-step endeavor, (Dkt. 54 at 5), that taxable income includes gross income, (*id.*) that tax benefits are often directly tied to a taxpayer's adjusted gross income ("AGI") (*id.* at 6), or that tax *deductions*, which are not at issue here, are a matter of legislative grace (*id.*). Of

- 13 -

course, the rule that deductions are a matter of legislative grace is in direct contrast to tax *credits* like the CARES Act credit, which are considered property owned by the taxpayer. *Sorenson v. Sec'y of Treasury of U.*S., 752 F.2d 1433 (9th Cir. 1985) (finding the earned income tax credit was "undisputedly owed to petitioner and undisputedly not owed to the United States *as taxes*."). None of this has any bearing on whether the Government had or could have a rational basis for excluding Plaintiffs from receiving a benefit to which over one hundred million similarly situated United States citizens are entitled to and have received.

Plaintiffs also note that Defendants have accurately described the way the CARES Act operates on pages 6-8 of their brief, including the description of the legal fiction created by 26 U.S.C. § 6428(e)(2), which provides that in the case of a refund or credit under subsection (f), half of each Advance Payment shall be treated as having been made or allowed to each married individual. Or, more simply put, when the Advance Payment is distributed to married individuals, each spouse is considered to have received a one-half share in the other spouse's payment. This legal fiction provides the mechanism for each of the three purportedly rational bases on which Defendants defend the Exclusion Provision, but falls far short of justifying the deprivation of a benefit to Plaintiffs that all other similarly situated United States citizens enjoy.

### A. Administrative Concerns Do Not Constitute a Valid Rational Basis for Excluding Plaintiffs From Receipt of the Advance Payment or the CARES Act Credit.

First, Defendants contend that Congress may have excluded United States citizens who file jointly with their ITIN-holder spouses for administrative ease. *See* Dkt. 54 at 10-12. Given the record-breaking scope and magnitude of the CARES Act, which implemented never-before seen government aid programs at record speed, administrative ease of implementation seems to have been the last consideration Congress had.  Defendants surmise that the IRS could not possibly be expected to

- 14 -

1    compute a credit based on one spouse's income and not the other, or know which

2    deductions would have been claimed by which spouse, and that Congress may

3    rationally have determined that it was just too much for the IRS to handle

4    administratively to compute the "theoretical eligibility of joint filers." *Id.* at 11. This

5    argument displays a fundamental lack of understanding of the innerworkings of the

6    Internal Revenue Service, inappropriately seeks to downplay the difference between

7    treatment of Plaintiffs and all other citizens, including the military, and ignores what

8    the IRS is actually doing, which is to deprive even citizens who have filed separately

9    from ITIN-holder spouses of their Advance Payment.

10        The IRS has access to most taxpayers' gross income through vast information

11   return reporting, such as IRS Form W-2, Wage and Tax Statement, IRS Form 1099-

12   Misc, Miscellaneous Income, etc. Employers face significant penalties for the failure

13   to gather and report information regarding wages paid to employees to the Internal

14   Revenue Service. I.R.C. §§ 6751, 6752. Plaintiffs do not dispute that Congress has

15   the authority to determine how best to implement revenue laws, but instead contend

16   that the IRS has the means and the information to easily determine which taxpayer

17   earned income and generated deductions. The notion that the IRS cannot "divine the

18   adjusted gross income a joint filer would have had if she had filed using the married

19   filing separately status" is patently false and insulting to the hard-working and highly

20   competent employees of the IRS. The IRS routinely prepares Substitute-For-Returns

21   for non-filers based on the very information Defendants contend cannot be "divined"

22   here. I.R.C. § 6020(b). The IRS also routinely audits complex partnerships and

23   corporations. Surely the IRS is up to the job of calculating whether an individual is

24   eligible for the Advance Payment.

25        The disparate treatment Plaintiffs receive as compared with all other United

26   States citizens and with United States Citizens who are married to ITIN holders but

27   are in the military is justified with the circular logic that the policy of treating

28

veterans differently has "always been deemed to be legitimate." *See* Dkt. 54 at 12. Plaintiffs do not dispute that those who sacrifice for our country should be afforded special treatment, but instead contend that this is one more example in which Plaintiffs are treated as an "other." This argument offers nothing more than a command to "Pay No Attention to that Man Behind the Curtain!"[2] and should be disregarded as such.

Finally, Plaintiffs are aware of instances in which United States Citizens who are married to ITIN holders and did file tax returns as "married filing separately," but nonetheless have been denied an Advance Payment and told either directly or through an authorized representative that the IRS is unable to issue Advance Payments. *See* Exhibit A[3]. On information and belief, these individuals are being told by IRS employees that they must wait to file their 2020 income tax return and claim the Advance Payment at that time. *Id.* If administrative ease were truly behind the Exclusion Provision, then the IRS would be issuing Advance Payments to those taxpayers who filed separately from their ITIN-holder spouses.

### B. The Legal Fiction Created by I.R.C. § 6428(e) is not a "Reconciliation Procedure."

Defendants posit that the legal fiction contained in Section 6428(e), which provides that when an Advance Payment is made, half of the Advance Payment "shall be treated as having been made or allowed to each individual filing such return," justifies the Exclusionary Provision. *See* Dkt. 54 at 13. Otherwise, Defendants argue,

---

[2] This line is spoken by The Wizard of Oz, played by Frank Morgan, in the film *The Wizard of Oz*, directed by Victor Fleming (1939).

[3] Plaintiffs include the Affidavit not as proof that the IRS is improperly denying Advanced Payments to Citizens who are married filing separately from their spouses, but as an offer of proof that at a minimum, Plaintiffs are entitled to discovery on how the IRS is implementing the CARES Act.

ITIN holders would be deemed to have received a one-half interest in their spouse's Advance Payment.

Standing alone, the legal fiction that each spouse owns half of another's Advance Payment is not problematic, however, when taken together with the Exclusion Provision it enables Defendants' circular, half-hearted argument about the administrative difficulties of unwinding a jointly filed tax return to determine individual eligibility for a tax credit. Even if it turns out that an individual who received the Advance Payment was not entitled to receive it, it won't have to be repaid. Section 6428(e)(1) expressly provides that the amount of credit **will not be reduced below zero**. Put another way, the Advance Payment is a gift in the hands of most Americans. To say that the Exclusion Provision was designed to ensure that overpayments did not inadvertently flow to ITIN holders who file jointly with United States Citizens ignores this nonrepayment rule. As with most things, the most obvious and simple explanation is the right one: the Exclusion Provision is designed to punish an unpopular group – ITIN holders and their spouses.

## C. The Exclusionary Provision is a Merely Vehicle to Punish an Unpopular Group.

The third and final purportedly rational basis Defendants contend may have been behind the Exclusion Provision is a desire to prevent nonresident aliens from receiving the Advance Payment. *See* Dkt. 54 at 13-14. This rationale gets to the heart of what the Exclusion Provision is really about – excluding not only nonresident aliens, but anyone who is associated with them. Congress' desire to deny a benefit to nonresident aliens does not entitle it to deny that benefit to United States citizens who are married to nonresident aliens. The Exclusion Provision seeks to do just that, by forcing married couples to file separately in order to receive the same benefit already distributed to over one hundred million similarly situated citizens.

In *Department of Agriculture v. Moreno*, the Supreme Court rejected as unconstitutional a similarly hollow "rational basis" for excluding a politically unpopular group from receiving benefits otherwise broadly distributed. 413 U.S. 528 (1973). In *Moreno*, the court considered whether provisions excluding "hippies" from receiving food stamps was unconstitutional. *Id.* The Food Stamp Act was initially enacted without any Exclusion Provision but was amended to define "households" entitled to receive food stamps in a manner that excluded all households that included unrelated individuals. *Id.* at 530, 531. In *Moreno*, as here, scant legislative history provided insight as to the reason for excluding the persons at issue. *Id.* at 534. The government in Moreno attempted to convince the Supreme Court that the law could have had a rational basis, arguing that Congress may have rationally thought that the Exclusion Provision in the Food Stamp Act would reduce fraud. *Id.* at 535. The Supreme Court summarily rejected the post-hoc attempt to rationalize marginalizing a politically unpopular group. "For if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate government interest." *Id.* at 534.

None of the supposedly rational bases advanced by Defendants outweigh the harm to the Plaintiffs' fundamental rights as articulated in Section I above. There is simply no legitimate government interest that would outweigh Plaintiffs' right to equal treatment under the laws. It is an unpopular time to be married to a nonresident alien — look no further than the two proposed Amicus Briefs filed in this case. *See* Dkts. 37-3 and 39-2. That does not grant Congress license to exclude from the CARES Act "persons who are so desperately in need of aid." *Moreno*, 413 U.S. at 538.

Without a doubt, equal protection does not prevent the government from treating different people in different ways. What it does prevent, however, is "the

1  power to legislate that different treatment be accorded to persons placed by a statute
2  into different classes on the basis of criteria wholly unrelated to the objective of that
3  statute." *Eisenstadt v. Baird*, 405 U.S. 438, 447 (1972). The different class in which
4  Defendants have placed Plaintiffs is wholly unrelated to the objective of the CARES
5  Act. In *Eisenstadt v. Baird*, the Supreme Court struck down a contraception law
6  under rational basis review, and patently refused to rely on post-hoc justifications for
7  the statute that the legislature never considered when enacting it. *Id.* at 450-52.
8  Indeed, negotiations on the second round of stimulus checks and the question of
9  whether Plaintiffs will once again be excluded from emergency relief only highlight
10 the political animus that prevented them from receiving the CARES Act Advance
11 Payment. *See*, *e.g.*, Rafeal Bernal, *GOP Senators push for stimulus checks to almost
12 2M excluded Americans*, THE HILL (July 25, 2020), https://thehill.com/latino/508984-
13 gop-senators-push-for-stimulus-checks-to-almost-2m-excluded-americans (last
14 visited July 27, 2020).

15       Former Florida Republican Party chairman, Al Cardenas, put it this way, "For
16 U.S. citizens to once again be treated in a disparate manner in trying times is mean-
17 spirited, and there's no logic to it." *Id.* One of the main arguments for including
18 Plaintiffs is basic fairness as they have SSNs, and pay taxes. "They need to redress it,
19 fix it, never repeat it again," Daniel Garza, executive director of The Libre Initiative,
20 told The Hill. "It's a question of flat-out fairness. *See id; see also* Shahar Ziv, *Rubio
21 Renews Stimulus Check Eligibility Push; 1.7 Million U.S. Citizens Currently
22 Excluded*, FORBES (July 26, 2020) https://www.forbes.com/sites/shaharziv/
23 2020/07/26/rubio-renews-second-stimulus-check-eligibility-push-coronavirus-
24 stimulus-package/#7a62be0c3b4b (last visited July 27, 2020).

25       The question for this Court to consider under rational basis is whether "there is
26 some ground of difference that rationally explains the different treatment accorded"
27 to persons who are married to ITIN holders and persons who are not. Here, as in

28

- 19 -

*Eisenstadt* and *Moreno*, "no such ground exists." *Eisenstadt*, 405 U.S. at 447. The rationales posited by the government ring hollow and there is no indication whatsoever that they were actually considered by the legislature. Instead, what is evident is a political animus towards Plaintiffs. *See*; Dkt. 37-3; Dkt. 39-2.

Desire to harm a politically unpopular group is never a rational basis for disparate treatment. *Moreno*, 413 U.S. at 534. Desire to undermine a marriage is never a rational basis for disparate treatment.

**III.     Plaintiffs are Entitled to an Injunction Now and Plaintiffs are Entitled to Discovery.**

Plaintiffs have demonstrated that the Exclusion Provision violates their fundamental rights under the First Amendment, as well as their Due Process and Equal Protection rights under the Fifth Amendment, and accordingly this Court should grant Plaintiffs' request for injunctive relief. Even under a rational basis analysis of Plaintiffs' equal protection claims, this Court should order an injunction to issue in Plaintiffs' favor or, at a minimum, order the parties to conduct discovery.

Acts of Congress are presumptively Constitutional, but a presumption must never be confused with a *per se* rule. *C.f. INS v. Chada*, 462 U.S. 919 (1983); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012). The presumption of constitutionality is a "rebuttable presumption" "of fact." *Borden's Farm Prods. Co. v. Baldwin*, 293 U.S. 194, 209 (1934). For every *FCC v. Beach Communications*, 508 U.S. 307 (1993), cited by the Government throughout its brief for the proposition that Plaintiffs must refute every reason and *possible, hypothetical* rationale that the Government may have had in enacting the Exclusion Provision, there is a *Metropolitan Life Insurance Company v. Ward*, 470 U.S. 869 (1985), which applied a more realistic approach to the question of whether the challenged law rationally advanced a reasonable and identifiable governmental objective, and remanded to the lower court for that determination. *See also, Romer v. Evans*, 517 U.S. 620 (1996)

1   (holding the rational basis test is not a formalistic ritual in which courts can conjure

2   up justifications for a law that are "divorced from any factual context" from which a

3   relationship to legitimate state interests can be discerned); *Village of Willowbrook v.*

4   *Olech*, 258 U.S. 562, 565 (2000) (affirming Seventh Circuit's holding reversing

5   District Court order granting motion to dismiss complaint when "allegations, quite

6   apart from the [government's] subjective motivation, are sufficient to state a claim for

7   relief under traditional equal protection analysis."). Defendants make much of the

8   same type of Exclusion Provision in other laws. Plaintiffs are aware of no case

9   holding that provision is constitutional. And much like in *Windsor*, the prior practice

10  of discrimination does not render it acceptable or constitutional.

11      *Aleman v. Glickman*, 217 F.3d 1191 (9th Cir. 2000), stands for the proposition

12  that when the government creates classifications that distinguish among different

13  groups of aliens, the appropriate standard for review is rational basis. The Exclusion

14  Provision at issue here does not distinguish between different groups of aliens, but

15  instead distinguishes between those United States citizens who are married to, and

16  file tax returns jointly with, individuals who have an ITIN and those who are not

17  married to ITIN holders or do not file tax returns jointly with ITIN holders.  Neither

18  *Aleman* nor any other case cited by Defendants[4] stands for the proposition that

19  _____

20  [4] *See generally INS v. Chadha*, 462 U.S. 919 (1983) (considering the constitutionality

21  of a provision in the Immigration and Nationality Act allowing the House of

22  Representatives to invalidate a decision of the Executive Branch to allow the
    respondent to remain in the United States); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567

23  U.S. 519 (2012) (evaluating the individual mandate provision of the Affordable Care
    Act imposing a "shared responsibility payment" on individuals who failed to

24  maintain health insurance); *Heller v. Doe*, 509 U.S. 312 (1993) (evaluating
    Kentucky's statutes pertaining to involuntary commitment of disabled individuals

25  under the Equal Protection Clause as to standard of evidence and involvement of

26  guardians in the involuntary commitment process; *Krishna Lunch of S. Cal. v.*

27  *Gordon* (9th Cir. 2020) (evaluating a "neutral and generally applicable" policy
    imposed by UCLA upon its student organizations).

28

Congress has ever articulated or could articulate a legitimate government interest that outweighs an American citizen's right to receive the same benefit afforded all others similarly situated during a crisis of devastating and as-yet unmeasurable proportions.

Throughout their brief, Defendants rely on cases like *Aleman v. Glickman*, 217 F.3d 1191 (9th Cir. 2000) and *Allied Concrete and Supply Company v. Baker*, 904 F.3d 1053 (9th Cir. 2018) to argue that, in essence, the government need not articulate an actual rational basis, because it is enough that one could have been conceived. Those cases have no bearing here. In *Allied Concrete*, the Ninth Circuit thoroughly analyzed actual evidence of what the legislature did consider when enacting the provision at issue. 904 F.3d at 1062. In *Aleman v. Glickman*, the Ninth Circuit was persuaded by the Supreme Court's having considered and upheld the classification regarding divorce at issue there on two separate prior occasions. 217 F.3d at 1201. Exhaustive research has not uncovered any case wherein any court has upheld a statutory provision treating United States citizens differently than other United States citizens based on whom they were married to and their marital status as elected on a federal income tax return. If it appears from the face of a complaint that the plaintiff could, if given the opportunity, prove that the challenged law is not rationally related to a legitimate government interest, Rule 12(b)(6) entitles her to gather and introduce evidence to do so. Plaintiffs have more than demonstrated the need for an injunction to issue, at once. However, if this Court has any remaining doubt regarding whether Plaintiffs are entitled to relief, the appropriate course of action is to order discovery to commence, and not to dismiss the well-pleaded complaint.

DATED: July 27, 2020                    Respectfully submitted,


                                        JANE DOE and JOHN DOE, individually and
                                        on behalf of others similarly situated.

- 22 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By:  */s/ Guinevere M. Moore*

Guinevere M. Moore (admitted *pro hac vice*)
MOORE TAX LAW GROUP LLC
150 N. Wacker Drive, Suite 1250
Chicago, Illinois 60606
T: (312) 549-9992
F: (312) 549-9991
guinevere.moore@mooretaxlawgroup.com
*Attorney for Plaintiffs*

BLAISE & NITSCHKE, P.C.
Heather L. Blaise (SBN 261619)
Lana B. Nassar (admitted *pro hac vice*)
Thomas J. Nitschke (IL Bar No. 6225740) *
Elisabeth A. Gavin (admitted *pro hac vice*)
123 N. Wacker Drive, Suite 250
Chicago, IL 60606
T: (312) 448-6602
F: (312) 803-1940
lnassar@blaisenitschkelaw.com

MATERN LAW GROUP
Matthew J. Matern (SBN 159798)
Joshua D. Boxer (SBN 226712)
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266
T: (310) 531-1900
F: (310) 531-1901
mmatern@maternlawgroup.com

KHALAF & ABUZIR, LLC
Vivian Khalaf (IL Bar No. 6210668) *
Omar Abuzir (IL Bar No. 6257708) *
20 N. Clark, Suite 720
Chicago, IL 60602

T: (708)-233-1122
F: (708)-233-1161
vkhalaf@immigrationjd.com

* Application for admission *pro hac vice* forthcoming